ANDERSON LAW FIRM
MARTIN W. ANDERSON, State Bar No. 178422
2070 North Tustin Avenue
Santa Ana, California 92705
Tel:  (714) 516-2700 ▪ Fax:  (714) 532-4700
E-mail:  martin@andersonlaw.net

CALIFORNIA LEMON LAW CENTER, INC.
LUCY KASPARIAN, State Bar No. 228932
136 N. Glendale Ave.
Glendale, California 91206
Tel:  (818) 547-5777 ▪ Fax:  (818) 547-9777
E-mail:  LKasparian@aol.com

Attorneys for Plaintiff Terry Gray

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| TERRY GRAY,<br><br>                              Plaintiff,<br><br>v.<br><br>MAZDA MOTOR OF AMERICA,<br>INC. et al.<br><br>                              Defendants. | Case No. SA CV 08-279 JVS (ANx)<br><br>HON. JAMES V. SELNA<br>Courtroom 10C<br><br>**PLAINTIFF'S TRIAL BRIEF IN SUPPORT OF MOTION FOR JUDGMENT AND IN SUPPORT OF PLAINTIFF'S CLOSING ARGUMENT**<br><br>Complaint Filed:  March 12, 2008<br>Trial Date:  July 7, 2009 |

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

Plaintiff Terry Gray submits the attached brief in support of his anticipated motion for judgment and his closing argument at the trial in this action.

///

///

ANDERSON LAW FIRM
2070 NORTH TUSTIN AVENUE
SANTA ANA, CALIFORNIA 92705
TELEPHONE:  (714) 516-2700

1

# **<u>TABLE OF CONTENTS</u>**

2  INTRODUCTION ................................................................. 1

3  LEGAL BRIEF .................................................................... 1

4  I.    ELEMENTS OF THE CLAIMS AND DAMAGES ............................ 1

5        A.    Plaintiff's Breach of Warranty ("BOW") Claim ................ 1

6        B.    Plaintiff's Implied Warranty of Merchantability ("IWOM")
                Claim ............................................................ 2

7
               1.    The consumer is not required to seek repairs before
8                    asserting a claim for breach of the implied warranty of
                     merchantability ..................................................... 3
9
               2.    The implied warranty covers the entire consumer good
10                   and the Defendant may not limit the warranty to the
                     scope of its express written warranty ......................... 4
11
               3.    In order to be "fit for [its] ordinary purpose," a consumer
12                   good must be in a safe condition and free of defects ......... 4

13             4.    The one-year implied warranty duration contained in
                     California law does not apply .................................... 4
14
         C.    Plaintiff's § 1793.2(b) Claim for Failure to Commence Repairs
15             Within a Reasonable Time and Failure to Complete Repairs
               Within 30 Days .................................................... 5
16
         D.    Damages on BOW, IWOM, and 1793.2(b) Claims ............... 6
17
               1.    Restitution of the Purchase Price ............................. 6
18
               2.    Other Measures ................................................ 7
19
               3.    Incidental/Consequential Damages ........................... 7
20
               4.    Time Spent Seeking Repairs ................................... 8
21
               5.    Insurance ....................................................... 9
22
         E.    Plaintiff's §1793.2(d)(2) Claim for Failure to Repurchase or
23             Replace Vehicle ................................................. 9

24             1.    Affirmative obligation to repurchase or replace .............. 10

25             2.    Each visit to a dealer counts as a "repair attempt," even if
                     the dealer does not attempt a repair .......................... 10
26
               3.    Plaintiff must make a reasonable number of attempts to
27                   repair the entire vehicle, but not to repair each individual
                     defect .......................................................... 11
28
               4.    Substantial Impairment ....................................... 12

ANDERSON LAW FIRM
2070 NORTH TUSTIN AVENUE
SANTA ANA, CALIFORNIA 92705
TELEPHONE: (714) 516-2700

F.      Damages on § 1793.2(d)(2) Claim ........................................ 14

II.     CIVIL PENALTIES ........................................................................ 15

A.      Civil Code § 1794(e) Penalty ........................................... 15

B.      Mazda's arbitration program is not a Qualified Dispute Resolution Program .................................................................. 16

1.      Mazda has failed to submit any admissible evidence to support its claim that its program is a QDRP ........................ 16

2.      Mazda's program is not a QDRP because it does not meet each and every requirement contained in Civil Code section 1793.22(d)(1) through (8) and 16 C.F.R. § 703.1 *et seq.* ............................................................................... 17

a.      Mazda did not disclose the existence of the program on the face of the warranty ............... 17

b.      Mazda's arbitration program will not award all of the damages authorized by Song-Beverly .......... 18

c.      Mazda's arbitration program allows for deductions that are not allowed by the Song-Beverly Consumer Warranty Act ................................. 19

d.      Mazda's arbitration program is unwilling to arbitrate all of the claims created by the Magnuson-Moss Warranty Act ......................... 20

e.      Mazda's arbitration program does not resolve disputes within 40 days .................................... 21

f.      Mazda's program is not willing to award attorney fees ........................................................... 21

C.      Plaintiff made a written demand, and Defendant failed to repurchase or replace the vehicle ......................................... 22

D.      Civil Code § 1794(c) Penalty ........................................... 23

E.      Civil Code § 3345 Enhancement ....................................... 25

III.    PREJUDGMENT INTEREST .......................................................... 26

IV.     REMEDIES SOUGHT IN THIS CASE ........................................... 30

V.      GENERAL PRINCIPLES OF LAW THAT ARE APPLICABLE TO ALL CLAIMS ................................................................................. 30

A.      The Song-Beverly Consumer Warranty Act should be broadly construed in favor of the consumer ................................... 30

B.      Revocation of acceptance/pre-filing demand is not required ............ 31

ANDERSON LAW FIRM
2070 NORTH TUSTIN AVENUE
SANTA ANA, CALIFORNIA 92705
TELEPHONE: (714) 516-2700

C.     Expert testimony not required to prove a defect ..................................32

D.     Plaintiff need not prove the exact cause of a defect ..........................32

E.     When a dealership attempts to repair a problem under the warranty, it admits that the problem is a defect and is covered by the warranty ..................................................................................33

F.     When a defect is reported, but not repaired, during the warranty period, the warranty does not expire until the defect is repaired ........34

G.     Plaintiff's alleged continued use of the Vehicle did not waive Plaintiff's right to recover damages ....................................................35

H.     Any waiver of the rights and remedies under Song-Beverly is void as a matter of law ...............................................................................35

I.     The presumption contained in Civil Code section 1793.22 is irrelevant to this action ................................................................................36

J.     Mazda is not entitled to an equitable offset against Plaintiff's damages ..................................................................................................36

ANDERSON LAW FIRM
2070 NORTH TUSTIN AVENUE
SANTA ANA, CALIFORNIA 92705
TELEPHONE: (714) 516-2700

PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR JUDGMENT AND IN SUPPORT OF PLAINTIFF'S CLOSING ARGUMENT

ANDERSON LAW FIRM
2070 NORTH TUSTIN AVENUE
SANTA ANA, CALIFORNIA 92705
TELEPHONE: (714) 516-2700

# INTRODUCTION

This case is now in trial before Judge Selna.  At the conclusion of trial, Plaintiff may make a motion for judgment on certain claims.  In addition, Plaintiff intends to refer to the authority in this brief in connection with closing argument. In order to make arguments on these matters easier on the Court and the Court Reporter, Plaintiff submits the attached brief.

## LEGAL BRIEF

### I.

### ELEMENTS OF THE CLAIMS AND DAMAGES

A.    Plaintiff's Breach of Warranty ("BOW") Claim

Gray's third claim, for breach of express warranty, arises pursuant to California Civil Code section 1794(a).

"Any buyer of consumer goods who is damaged by a failure to comply with any obligation . . . under an implied or express warranty . . . may bring an action for the recovery of damages and other legal and equitable relief."  Cal. Civ. Code § 1794(a).

"Where, as in this case, the express warranty contemplates that the seller's liability for a breach of warranty does not attach until he has had an opportunity to remedy the defects, his failure or refusal to act, where such opportunity is afforded the seller, fixes his liability. . . . An unsuccessful effort to remedy the defects renders the seller liable on his warranty; and the buyer is not bound to allow him a second opportunity, or to permit him to tinker with the article indefinitely in the hope that it may ultimately be made to comply with the warranty."  *Rose v. Chrysler Motors Corp.*, 212 Cal.App.2d 755, 763 (1963).

Mazda will argue that the claim for breach of an express warranty is the same as a claim for violation of Civil Code section 1793.2(d), and claim that the requirement of making a "reasonable number of repair attempts" in section 1793.2(d) is also a requirement on a claim for breach of express warranty.

ANDERSON LAW FIRM
2070 NORTH TUSTIN AVENUE
SANTA ANA, CALIFORNIA 92705
TELEPHONE: (714) 516-2700

1   This argument was expressly rejected in *Park City Services, Inc. v. Ford
2   Motor Co., Inc.*, 144 Cal.App.4th 295.  There, the Court of Appeal expressly
3   recognized that a claim for failure to repurchase was completely separate from a
4   claim for breach of an express warranty.  *Id.* at 301-03.

5   Mazda's argument also has no merit because Civil Code section 1794(a)
6   makes clear that a claim for violating section 1793.2(d) is entirely separate from a
7   claim for breach of an express warranty.  "Any buyer of consumer goods who is
8   damaged by a failure to comply with any obligation [1] under this chapter or [2]
9   under an implied or [3] express warranty . . . may bring an action for the recovery
10  of damages and other legal and equitable relief."  Cal. Civ. Code § 1794 (bracketed
11  material added).

12  A failure to repair within a reasonable number of attempts is a violation of
13  Cal. Civil Code § 1793.2(d) and thus an obligation "[1] under this chapter."  Cal.
14  Civil Code § 1794(a).  A breach of express warranty, on the other hand, is an
15  obligation "[2] under an implied or [3] express warranty."  Id.  If the Legislature
16  had intended to merge these three different claims, it would not have listed them
17  separately.  Mazda's attempt to merge two of the three claims created by Cal. Civil
18  Code § 1794(a) should be rejected.

19  **B.    Plaintiff's Implied Warranty of Merchantability ("IWOM") Claim**
20  Gray's first claim, for breach of the implied warranty of merchantability
21  under Song-Beverly, arises pursuant to California Civil Code § 1792 and 1794(a).

22  "[E]very sale of consumer goods that are sold at retail in this state shall be
23  accompanied by the manufacturer's and the retail seller's implied warranty that the
24  goods are merchantable."  Cal. Civ. Code § 1792.

25  The protections afforded by the implied warranty are defined in Civil Code
26  §1791.1.  "'Implied warranty of merchantability' or 'implied warranty that goods
27  are merchantable' means that the consumer goods meet each of the following:  (1)
28  Pass without objection in the trade under the contract description.  (2) Are fit for

ANDERSON LAW FIRM
2070 NORTH TUSTIN AVENUE
SANTA ANA, CALIFORNIA 92705
TELEPHONE: (714) 516-2700

1   the ordinary purposes for which such goods are used. (3) Are adequately

2   contained, packaged, and labeled. [and] (4) Conform to the promises or

3   affirmations of fact made on the container or label."  Cal. Civ. Code § 1791.1(a).[1]

4          In a commercial transaction, the implied warranty attaches and can be

5   breached only at the moment that title passes.  However, in a consumer transaction,

6   the implied warranty has the same duration as the express warranty provided at the

7   time of sale.  "[I]mplied warranties[2] may be limited in duration to the duration of a

8   written warranty of reasonable duration, if such limitation is conscionable and is

9   set forth in clear and unmistakable language and prominently displayed on the face

10  of the warranty." 15 U.S.C. § 2308(b).  Any limitation beyond that permitted

11  under § 2308(b) is "ineffective for purposes of [federal law] and State law."  15

12  U.S.C. § 2308(c).

13         "Any buyer of consumer goods who is damaged by a failure to comply with

14  any obligation . . . under an implied or express warranty . . . may bring an action

15  for the recovery of damages and other legal and equitable relief."  Cal. Civ. Code §

16  1794(a).

17             1.   The consumer is not required to seek repairs before asserting a

18                  claim for breach of the implied warranty of merchantability

19         A consumer who is injured by a breach of the implied warranty can revoke

20  acceptance immediately without giving the manufacturer any opportunities to

21  repair.  "[T]here is no requirement the seller be given an opportunity to repair

22  when the implied warranty of merchantability is breached."  *Mocek v. Alfa Leisure,*

23  *Inc.*, 114 Cal.App.4th 402, 404 (2003).

24

25  _____

26      [1] Because the definition of "implied warranty of merchantability" has four
    different possible definitions, "[m]erchantability has several meanings."  *Hauter v.*
27  *Zogarts*, 14 Cal.3d 104, 117-118 (1975).

28      [2] 15 U.S.C. § 2301(7) defines "implied warranty" to include any implied
    warranty arising under State law, as modified by 15 U.S.C. § 2308.

ANDERSON LAW FIRM
2070 NORTH TUSTIN AVENUE
SANTA ANA, CALIFORNIA 92705
TELEPHONE: (714) 516-2700

2. <u>The implied warranty covers the entire consumer good and the Defendant may not limit the warranty to the scope of its express written warranty</u>

Under Civil Code section 1791.1(a), the implied warranty covers the entire "consumer good," regardless of whether it is also covered by the manufacturer's written warranty. *See* Cal. Civ. Code § 1791(a) (consumer good means "any new product or part thereof."). When an express warranty is given, the Defendant may not disclaim or limit the implied warranty, in any way. Cal. Civ. Code § 1793. Thus, any attempt to limit the scope of the implied warranty to defects which are covered under an express warranty, is ineffective.

3. <u>In order to be "fit for [its] ordinary purpose," a consumer good must be in a safe condition and free of defects</u>

The words "fit for the ordinary purposes for which such goods are used" requires that the vehicle be "in safe condition and substantially free from defects." *Isip v. Mercedes-Benz USA, LLC*, 155 Cal.App.4th 19, 25 (2007). Plaintiff need not establish that the "vehicle manifests a defect that is so basic that it renders the vehicle unfit for the ordinary purpose of providing transportation." *Id*. "We reject the notion that merely because a vehicle provides transportation from point A to point B, it necessarily does not violate the implied warranty of merchantability. A vehicle that smells, lurches, clanks, and emits smoke over an extended period of time is not fit for its intended purpose." *Id* at 27.

4. <u>The one-year implied warranty duration contained in California law does not apply</u>

Mazda may cite California Civil Code § 1791.1(c), claiming that under California law, the implied warranty lasts only one year. As noted above, federal law provides that the implied warranty will last as long as any express warranty, and voids any state law or warranty language to the contrary. 15 U.S.C. § 2308(b), (c).

1    Additionally, at trial, Plaintiff introduced Mazda's warranty booklet, which

2    contains language limiting the implied warranty to the duration of the express

3    written warranty.  *See* Ex. 8-15.  Thus, even if state law could somehow supersede

4    federal law, Mazda has chosen federal law in this case.

5         C.    Plaintiff's § 1793.2(b) Claim for Failure to Commence Repairs Within

6               a Reasonable Time and Failure to Complete Repairs Within 30 Days

7    Gray's fifth claim, for failing to commence repairs in a reasonable time and

8    to complete them with 30 days, arises pursuant to California Civil Code §

9    1793.2(b) and 1794(a).

10    "Where . . . service or repair of the goods is necessary because they do not

11    conform with the applicable express warranties, service and repair shall be

12    commenced within a reasonable time by the manufacturer or its representative in

13    this state.  Unless the buyer agrees in writing to the contrary, the goods shall be

14    serviced or repaired so as to conform to the applicable warranties within 30 days."

15    Cal. Civ. Code § 1793.2(b).

16    "When the vehicle is out of service more than 30 calendar days, the

17    nonconformity does not have to be ongoing."  *Milicevic v. Fletcher Jones Imports,*

18    *Ltd.*, 402 F.3d 912, 916 (9th Cir. 2005) (decided under similar provision of Nevada

19    law).

20    A consumer may sue for violation of these requirements under Civil Code

21    section 1794, which provides, in relevant part: "(a) Any buyer of consumer goods

22    who is damaged by a failure to comply with any obligation under this chapter . . .

23    may bring an action for the recovery of damages and other legal and equitable

24    relief."  Cal. Civ. Code § 1794(a).

25    Mazda routinely argues that this provision applies only when the car is

26    actually in "the shop" for more than 30 days.  Every published decision to consider

27    subdivision (b) has concluded otherwise.  *Gomez v. Volkswagen of America, Inc.*,

28    169 Cal.App.3d 921, 925 (1985).  "This statute . . . sets a time limit for the repair

ANDERSON LAW FIRM
2070 NORTH TUSTIN AVENUE
SANTA ANA, CALIFORNIA 92705
TELEPHONE: (714) 516-2700

- 5 -

1  of consumer goods (§ 1793.2, subd. (b)) . . . ."  *National R.V., Inc. v. Foreman*, 34

2  Cal.App.4th 1072, 1077-1078 (1995).  When the Legislature wants to require 30

3  days in the shop, it has said so.  *See* Cal. Civ. Code § 1793.22(a)(3)(requiring 30

4  days in the repair facility in order to take advantage of a presumption that a

5  reasonable number of repair attempts have been made).

6       D.    Damages on BOW, IWOM, and 1793.2(b) Claims

7       Civil Code section 1794 sets forth a comprehensive damages scheme for

8  claims brought under the Song-Beverly Consumer Warranty Act.

9            1.    Restitution of the Purchase Price

10      Section 1794 begins by adopting the measure of restitution from Civil Code

11  section 1793.2(d), and then *adds* various remedies from the Commercial Code.

12  Cal. Civ. Code § 1794(a), (b) ("The measure of the buyer's damages in an action

13  under this section shall include the rights of replacement or reimbursement as set

14  forth in subdivision (d) of Section 1793.2, and [various Commercial Code

15  remedies].").

16      Where "the buyer has rightfully rejected or justifiably revoked acceptance of

17  the goods or has exercised any right to cancel the sale, Sections 2711, 2712, and

18  2713 of the Commercial Code shall apply."  Cal. Civ. Code § 1794(b)(1).  If "the

19  buyer has accepted the goods, Sections 2714 and 2715 of the Commercial Code

20  shall apply, and the measure of damages shall include the cost of repairs necessary

21  to make the goods conform." Cal. Civ. Code § 1794(b)(2).

22      The provisions of Civil Code section 1794(b)(1) "give a buyer the right to

23  cancel the purchase contract and recover any amounts paid toward the purchase of

24  the goods."  *Mocek v. Alfa Leisure, Inc.*, 114 Cal.App.4th 402, 407 (2003)

25  (quotations omitted).  However, Song-Beverly "contains no provision which

26  requires rejection or revocation of acceptance of the vehicle within a reasonable

27  time . . . ."  *Krotin v. Porsche Cars North America, Inc.*, 38 Cal.App.4th 294, 300

28  (1995).

ANDERSON LAW FIRM
2070 NORTH TUSTIN AVENUE
SANTA ANA, CALIFORNIA 92705
TELEPHONE: (714) 516-2700

- 6 -

The evidence at trial demonstrated that Gray accepted and thereafter revoked acceptance of goods. As a result, Gray is entitled to all of the remedies set forth in Commercial Code sections 2711-2715.

Pursuant to Commercial Code section 2711, Gray is entitled to recover "so much of the price as has been paid" and "any expenses reasonably incurred in their inspection, receipt, transportation, care and custody." *Music Acceptance Corp. v. Lofing*, 32 Cal.App.4th 610, 621 (1995) ("Thus, in the event of a breach of the implied warranty of merchantability, the buyer is entitled to cancel the contract and recover any amounts paid toward the purchase of the goods."); *Seely v. White Motor Co.*, 63 Cal.2d 9, 14 (1965) ("The damages awarded by the trial court, 'the loss directly and naturally resulting in the ordinary course of events from the breach of warranty', can properly include lost profits as well as the amount paid on the purchase price." [citations omitted]).

2.    Other Measures

In the event that the Court concludes that Gray did not revoke acceptance, the primary remedy is contained in Commercial Code section 2714(2): "[T]he difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount."

Here, Gray believes that special circumstances (Mazda's inability to repair the vehicle) warrant recovery of the purchase price, but if they do not, he is entitled to diminution in value.

3.    Incidental/Consequential Damages

"The measure of the buyer's damages in an action under this section shall include the rights of replacement or reimbursement as set forth in subdivision (d) of Section 1793.2, <u>and the following</u>: . . . (2) Where the buyer has accepted the goods, Sections 2714 and 2715 of the Commercial Code shall apply, and the

ANDERSON LAW FIRM
2070 NORTH TUSTIN AVENUE
SANTA ANA, CALIFORNIA 92705
TELEPHONE: (714) 516-2700

1  measure of damages shall include the cost of repairs necessary to make the goods

2  conform." Cal. Civ. Code § 1794(b).

3  Section 2715 of the Commercial Code authorizes the recovery of incidental

4  and consequential damages. "(1) Incidental damages resulting from the seller's

5  breach include expenses reasonably incurred in inspection, receipt, transportation

6  and care and custody of goods rightfully rejected, any commercially reasonable

7  charges, expenses or commissions in connection with effecting cover and any other

8  reasonable expense incident to the delay or other breach. (2) Consequential

9  damages resulting from the seller's breach include (a) Any loss resulting from

10  general or particular requirements and needs of which the seller at the time of

11  contracting had reason to know and which could not reasonably be prevented by

12  cover or otherwise . . . ." Cal. Comm. Code § 2715.

13  Because the Consumer Warranty Act expressly authorizes the recovery of

14  incidental and consequential damages, any purported waiver of those damages is

15  invalid. *Gusse v. Damon Corp.*, 470 F.Supp.2d 1110, 1117-18 (C.D. Cal. 2007).

16  4.   Time Spent Seeking Repairs

17  "In an action against a seller for a breach of warranty of quality, the

18  purchaser may recover damages for money and time spent in reasonable efforts to

19  make the goods conform to the warranty under which they were sold. Because it

20  may be assumed that a buyer will spend time and money in reasonable efforts to

21  make defective goods conform to their warranty, the amounts incurred or paid for

22  that purpose should be considered as being within the contemplation of the parties

23  at the time of the original contract of sale. Since such damages proximately result

24  from the breach of warranty and can be ascertained with reasonable certainty, they

25  are allowable." *Roberts Distributing Co. v. Kaye-Halbert Corp.*, 126 Cal.App.2d

26  664, 671-672 (1954); *See also Rose v. Chrysler Motors Corp.*, 212 Cal.App.2d

27  755, 763 (1963).

28

ANDERSON LAW FIRM
2070 NORTH TUSTIN AVENUE
SANTA ANA, CALIFORNIA 92705
TELEPHONE: (714) 516-2700

5.     Insurance

Plaintiff believes that insurance coverage *for the vehicle*, as opposed to insurance for the driver, from the date of the demand for repurchase, is recoverable as an incidental or consequential damage.  Such insurance is recoverable because had Defendant repurchased the vehicle when Plaintiff asked, Plaintiff would not have had to pay it.

In addition, insurance *on the vehicle* was entirely for the benefit of the Defendant.  In the event that the vehicle suffered any damage after revocation, Defendant would be entitled to the proceeds of that insurance.  Comm. Code § 2510(2) ("[w]here the buyer rightfully revokes acceptance he may to the extent of any deficiency <u>in his effective insurance coverage</u> treat the risk of loss as having rested on the seller from the beginning.").

E.     Plaintiff's §1793.2(d)(2) Claim for Failure to Repurchase or Replace Vehicle

Gray's fourth claim, for failure to promptly repurchase a product, arises pursuant to California Civil Code § 1793.2(d) and 1794(a).

"If the manufacturer or its representative in this state is unable to service or repair a new motor vehicle . . . to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either promptly replace the new motor vehicle in accordance with subparagraph (A) or promptly make restitution to the buyer in accordance with subparagraph (B).  However, the buyer shall be free to elect restitution in lieu of replacement, and in no event shall the buyer be required by the manufacturer to accept a replacement vehicle."  Cal. Civ. Code § 1793.2(d)(2).

A lawsuit for failing to promptly repurchase a «Type of Product» is authorized by section 1794:  "(a) Any buyer of consumer goods who is damaged by a failure to comply with any obligation under this chapter . . . may bring an

ANDERSON LAW FIRM
2070 NORTH TUSTIN AVENUE
SANTA ANA, CALIFORNIA 92705
TELEPHONE: (714) 516-2700

1    action for the recovery of damages and other legal and equitable relief."  Cal. Civ.

2    Code § 1794(a).

### 1.    Affirmative obligation to repurchase or replace

4          It is important to remember that Mazda's obligation to repurchase or replace

5    a vehicle is *not* triggered by a repurchase request.  Rather, Mazda has a continuing

6    statutory duty to repurchase whenever the statutory requirements are met,

7    regardless of whether Plaintiff makes a demand:

8              [T]he Act does not require consumers to take any affirmative steps to
               secure relief for the failure of a manufacturer to service or repair a
9              vehicle to conform to applicable warranties—other than, of course,
               permitting the manufacturer a reasonable opportunity to repair the
10             vehicle  . . . . In reality, . . . the manufacturer seldom on its own
               initiative offers the consumer the options available under the Act: a
11             replacement vehicle or restitution. Therefore, as a practical matter, the
               consumer will likely request replacement or restitution. But the
12             consumer's request is not mandated by any provision in the Act.
               Rather, the consumer's request for replacement or restitution is often
13             prompted by the manufacturer's unforthright approach and
               stonewalling of fundamental warranty problems.  An automobile
14             manufacturer need not read minds to determine which vehicles are
               defective; it need only read its dealers' service records.
15
16    *Krotin v. Porsche Cars North America, Inc.*, 38 Cal.App.4th 294, 302-303 (1995).

17
### 2.    Each visit to a dealer counts as a "repair attempt," even if the
18              dealer does not attempt a repair

19
20         Mazda may argue that in order to qualify as a repair attempt, the dealership

21    must have actually tried to repair the problem.  This argument has no merit.

22         "[T]he only affirmative step the Act imposes on consumers is to permit the

23    manufacturer a reasonable opportunity to repair the vehicle.  Whether or not the

24    manufacturer's agents choose to take advantage of the opportunity, or are unable

25    despite that opportunity to isolate and make an effort to repair the problem, are

26    matters for which the consumer is not responsible."  *Oregel v. American Isuzu

27    Motors, Inc.*,  90 Cal.App.4th 1094, 1103-1104 (2001) (internal citations and

28    quotations omitted).

ANDERSON LAW FIRM
2070 NORTH TUSTIN AVENUE
SANTA ANA, CALIFORNIA 92705
TELEPHONE: (714) 516-2700

ANDERSON LAW FIRM
2070 NORTH TUSTIN AVENUE
SANTA ANA, CALIFORNIA 92705
TELEPHONE: (714) 516-2700

3.  <u>Plaintiff must make a reasonable number of attempts to repair the entire vehicle, but not to repair each individual defect</u>

In cases like this one, the defense often argues that this section requires that the <u>every defect</u> be subject to repairs a reasonable number of times.  However, section 1793.2(d) contains no language requiring that the each defect be the subject of multiple repairs.  Rather, section 1793.2(d) only requires that the product not conform to the warranty after a reasonable number of opportunities to repair.

"The statute requires the manufacturer to afford the specified remedies of restitution or replacement if that manufacturer is unable to repair <u>the vehicle</u> 'after a reasonable number of attempts.'"  *Silvio v. Ford Motor Company*, 109 Cal.App.4[th] 1205, 1208 (2003) (emphasis added); *See also Robertson v. Fleetwood Travel Trailers of California, Inc.*, 144 Cal.App.4[th] 785, 800-03 (2006) (affirming jury verdict where no repair attempts were made to certain defects because other defects had been subject to repair more than a reasonable number of repair attempts).  "[T]he critical question of whether a reasonable number of attempts were provided, thereby allowing the consumer to forego further repair attempts and pursue a 'replace-or-repurchase' remedy, depends upon the facts and circumstances of each case."  *Id* at 803.

The Legislature's intention in this regard is also demonstrated in section 1793.22(b)(3), which creates a presumption regarding when a "reasonable number of repair attempts" have been made.  Section 1793.22(b)(3) creates a presumption that a reasonable number of repair attempts have been made when "[t]he vehicle is out of service by reason of repair of nonconformities by the manufacturer or its agents for a cumulative total of more than 30 calendar days since delivery of the vehicle to the buyer."  Although subdivisions (b)(1) and (b)(2) of the presumption contain language requiring the "same nonconformity" be subject to multiple repairs, nothing in subdivision (b)(3) requires that the problems be the same.  In sum, the presumption demonstrates that the Legislature intended to allow different

1    defects to be aggregated to reach a reasonable number of repair attempts, so long

2    as one remains un-repaired after a reasonable number of attempts.

3         Here, Mazda's evidence demonstrates that Mazda repeatedly attempted to

4    parse out the defects into the narrowest of categories, i.e. a certain number of repair

5    attempts for a clunk, a certain number for a squeak, a certain number for stalling,

6    and a certain number for a check engine light.  In doing so, Mazda violated the

7    Act, because it mandates that Mazda provide conform the vehicle to the terms of

8    the warranty within a reasonable number of attempts, and not to merely repair each

9    narrow category of defect.  Indeed, Mazda's application of an incorrect legal

10   standard is a willful violation of the Act.  *Oregel v. American Isuzu Motors, Inc.*,

11   90 Cal.App.4th 1094, 1095 (2001) (where manufacturer excludes repair visits

12   where no work was done when counting the number of repair attempts, defendant

13   willfully violates the Song-Beverly Act).

14             4.   <u>Substantial Impairment</u>

15        In *Schreidel v. American Honda Motor Co.*, 34 Cal. App. 4th 1242, 1250

16   (1995), the Court of Appeal explained the type and quantum of proof required to

17   show the existence of a nonconformity that substantially impairs the use, value, or

18   safety of the vehicle to the buyer:

19            Due to the intermittent problems, [Plaintiff] avoided using her car for
             long trips, thereby reducing its usefulness and value to her. . .
20            [Plaintiff] experienced panic when she could not shift into first gear.
             She felt as though she never had a new car. The problems were
21            becoming worse as the car aged.  Schreidel had lost confidence in the
             car and attempted to replace it. The jury could determine that the
22            value of the goods to this particular buyer was substantially impaired.

23   *Id*.

24        In *Schreidel*, the Court of Appeal affirmed the verdict even though "[t]here

25   was no objective evidence presented by plaintiff to support the jury's verdict."  *Id*.

26   at 1248.

27

28

ANDERSON LAW FIRM
2070 NORTH TUSTIN AVENUE
SANTA ANA, CALIFORNIA 92705
TELEPHONE: (714) 516-2700

ANDERSON LAW FIRM
2070 NORTH TUSTIN AVENUE
SANTA ANA, CALIFORNIA 92705
TELEPHONE: (714) 516-2700

1    More recently, the Court of Appeal in *Lundy v. Ford Motor Company*, 87

2  Cal. App. 4th 472, 478 (2001), explained that substantial impairment must be

3  determined "within the specific circumstances of the buyer." *Id*.

4    It is true that *Lundy* concluded that the substantial impairment test is

5  objective.  However, because *Lundy* appears to conflict with *Schreidel*, this Court

6  is not bound by either decision and must instead decide the issue itself.  Given the

7  plain language of the statute, Plaintiff urges the Court to conclude that the standard

8  is subjective, and to reject *Lundy*'s clearly incorrect interpretation of the plain

9  language of the statute.

10   Even if the standard is objective, Plaintiff's testimony concerning the

11  impairment of the use, value, or safety of the vehicle is certainly one of the

12  "specific circumstances" that the jury can consider in determining whether the use,

13  value, or safety of the vehicle is impaired.

14   In *Milicevic v. Mercedes-Benz USA, LLC*, 256 F.Supp.2d 1168 (D. Nev.

15  2003), the District Circuit addressed a Nevada lemon law with a similar substantial

16  impairment standard.  There, the District Court concluded that a cosmetic defect in

17  a rear window seal substantially impaired the use, value, or safety of the vehicle.

18  The Court explained that

19      The statute's test is whether the nonconformity substantially impairs
        the use and value of the motor vehicle to the buyer. Plaintiff urges that
20      the test is purely subjective. Defendants argue that it must be purely
        objective. This Court disagrees with both. Rather, the test is
21      "reasonably subjective," that is, it is both subjective and objective, but
        "the choice of wording is more consistent with a subjective standard
22      than an objective one." "The standard is subjective in that the fact
        finder first must examine the subjective desires, needs and
23      circumstances of the particular customer. In light of those desires,
        needs and circumstances, the fact finder then must make an objective
24      determination as to whether the value of the motor vehicle to the
        consumer has, in fact, been substantially impaired. In making this
25      determination, the fact finder must determine that the consumer's
        subjective desires, needs and circumstances are reasonable."
26      Dohmann,

27  *Id* at 1176 (citations omitted).

28

PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR JUDGMENT AND IN SUPPORT OF PLAINTIFF'S CLOSING ARGUMENT

The Court continued by explaining that a buyer who purchases a new vehicle has the right to expect that he will get what he pays for:

> Even more compelling is the clear fact that Ms. Milicevic did not get the motor vehicle she bargained for, or thought she was getting, or was represented she was getting, combined with the fact that she was presented not only with two significant nonconformities, but, in the aggregate, received a vehicle that has had, and appears to continue to have, a multitude of problems the average, reasonable buyer would not, and should not, expect to experience . . . . .

*Id* at 1178.

By its own terms, the definition of nonconformity contained in section 1793.22(e)(1) applies only to Plaintiff's claim that Defendant violated Civil Code section 1793.2(d) by failing to repurchase or replace the vehicle after failed repair attempts.  *See* Cal. Civ. Code § 1793.22(e) ("For the purposes of <u>subdivision (d) of Section 1793.2</u> and this section, the following terms have the following meanings:").

Plaintiff's Complaint alleges six claims, including breach of the implied warranty of merchantability, breach of the implied warranty of fitness, breach of the express written warranty, and for violation of Civil Code § 1793.2(b).  Nothing in section 1793.22(e) indicates an intention to apply the definition of "nonconformity" to Plaintiff's claim for violating Civil Code section 1793.2(b), or for breaching the express or implied warranties, and no published appellate decision has ever done so.  *See* Cal. Civ. Code § 1794(a) (authorizing suit for those violations).

F.    <u>Damages on § 1793.2(d)(2) Claim</u>

The measure of restitution on a claim for violation section 1793.2(d) with respect to a motor vehicle is explained in Civil Code § 1793.2(d)(2)(B):

ANDERSON LAW FIRM
2070 NORTH TUSTIN AVENUE
SANTA ANA, CALIFORNIA 92705
TELEPHONE: (714) 516-2700

1

2

3

4

5

In the case of restitution, the manufacturer shall make restitution in an amount equal to the actual price paid or payable by the buyer, including any charges for transportation and manufacturer-installed options, but excluding nonmanufacturer items installed by a dealer or the buyer, and including any collateral charges such as sales tax, license fees, registration fees, and other official fees, plus any incidental damages to which the buyer is entitled under Section 1794, including, but not limited to, reasonable repair, towing, and rental car costs actually incurred by the buyer.

6

7

8

The Act also sets forth a provision for calculating a mileage deduction from the recovery, based upon the mileage at which the vehicle was first delivered for repair.  Cal. Civ. Code § 1793.2(d)(2)(C).

9

10

11

Finally, while the statute specifically authorizes the recovery of certain items, "[n]othing in this paragraph shall in any way limit the rights or remedies available to the buyer under any other law."  *Id.*

12

13

14

In addition to the amounts listed, Gray is also entitled to recover finance charges.  *Robertson v. Fleetwood Travel Trailers*, 144 Cal.App.4th 785, 812-13 (2006); *Mitchell v. Blue Bird Body Co.*, 80 Cal.App.4th 32, 35 (2000).

15

16

Finally, pursuant to Civil Code section 1794(b), Gray is also entitled to incidental and consequential damages on this claim.  *See* Part I(D)(3), above.

17

18

## II.

## CIVIL PENALTIES

19

A.    Civil Code § 1794(e) Penalty

20

21

22

23

"[I]f the buyer establishes a violation of paragraph (2) of subdivision (d) of Section 1793.2, the buyer shall recover damages and reasonable attorney's fees and costs, and may recover a civil penalty of up to two times the amount of damages." Cal. Civ. Code § 1794(e)(1).

24

25

26

27

28

Subdivision (e) imposes an automatic penalty when a manufacturer or distributor violates its obligation to repurchase or replace a vehicle under section 1793.2(d)(2).  There is no requirement that the violation be willful.  *Suman v. Superior Court*, 39 Cal.App.4th 1309, 1316 (1995); *Schreidel v. American Honda Motor Co.*, 34 Cal.App.4th 1242, 1250 (1995).

ANDERSON LAW FIRM
2070 NORTH TUSTIN AVENUE
SANTA ANA, CALIFORNIA 92705
TELEPHONE: (714) 516-2700

1   However, there are three exceptions, but none are applicable here.

2       B.    <u>Mazda's arbitration program is not a Qualified Dispute Resolution</u>

3           <u>Program</u>

4       "[I]f the manufacturer maintains a qualified third-party dispute resolution

5   process which substantially complies with Section 1793.22, the manufacturer shall

6   not be liable for any civil penalty pursuant to this subdivision."  Cal. Civ. Code §

7   1794(e)(2).  Here, Mazda admitted that its program does not qualify in response to

8   a Request for Admission, and thus, this issue is settled.

9       Even if Mazda's contrary claims are allowed, Mazda's program does not

10  qualify for several reasons.

11      1.    <u>Mazda has failed to submit any admissible evidence to support</u>

12          <u>its claim that its program is a QDRP</u>

13      Mazda's entire proof on the QDRP issue consists of a few paragraphs in the

14  Declaration of Paul Winovitch.  This proof is not sufficient to establish that

15  Mazda's program is a QDRP.

16      In order to prove that Mazda's arbitration program is a QDRP, Mazda must

17  prove that its program meets each of the requirements of subdivisions (1) through

18  (9) of Civil Code § 1793.22(d) and the requirements of 16 C.F.R. § 703.1, 703.2,

19  703.3, 703.4, 703.5, 703.6, 703.7, and 703.8.  Mr. Winovitch's conclusory

20  assertions that the program meets each of these requirements is not sufficient to

21  prove that the program actually does.  *Evers v. General Motors Corp.*, 770 F.2d

22  984, 986 (9th Cir. 1985) ("This court has consistently held that conclusory

23  allegations without specific supporting facts have no probative value.").

24      Civil Code section 1793.22(d) sets forth *nine separate* requirements that

25  Mazda must establish in order to prove that its program is a QDRP.  Certification

26  is the last of those nine requirements.  *See* Cal. Civ. Code § 1793.22(d)(9).  Mazda

27  has submitted no proof that its program meets any of the eight other requirements

28  contained in Civil Code section 1793.22(d)(1) through (8) or any of the

ANDERSON LAW FIRM
2070 NORTH TUSTIN AVENUE
SANTA ANA, CALIFORNIA 92705
TELEPHONE: (714) 516-2700

1   requirements contained in 16 C.F.R. § 703.1 through 703.8.  If Certification by the

2   Department of Consumer Affairs were the only requirement for a program to be

3   qualified, the Legislature would have had no need to include subdivisions (1)

4   through (8) in Civil Code § 1793.22(d).

5        Mazda may claim that certification is proof that the Department of

6   Consumer Affairs ("DCA") found compliance with subdivision (1) through (8) of

7   section 1793.22.  While the DCA's Certification is admissible to prove that the

8   program is Certified by the DCA, the Certification is not admissible to prove that

9   the DCA found compliance with the other sections, because the DCA's

10  conclusions are hearsay.  *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir.

11  2001) (Court may take judicial notice of another court's opinion, but not of the

12  truth of the facts recited therein).

13       Finally, Mazda's evidence shows only that Mazda's program was certified

14  as of August 13, 2008, which was *after* this lawsuit was filed.

15            2.    <u>Mazda's program is not a QDRP because it does not meet each</u>

16                  <u>and every requirement contained in Civil Code section</u>

17                  <u>1793.22(d)(1) through (8) and 16 C.F.R. § 703.1 *et seq.*</u>

18                  a.    <u>Mazda did not disclose the existence of the program on</u>

19                        <u>the face of the warranty</u>

20       Civil Code § 1793.22(d)(1) requires that Mazda's program comply with the

21  requirements of 16 C.F.R. § 703.1 *et seq*.  The Code of Federal Regulations

22  required Mazda to disclose certain information about the arbitration program "on

23  the face of the written warranty."  16 C.F.R. § 703.2(b).  With respect to Mazda's

24  warranty booklet, "[o]n the face of the warranty" means:  "[T]he page in such

25  document on which the warranty text begins."  16 C.F.R. § 703.1(h).

26       That page must include

27

28

(1) A statement of the availability of the informal dispute settlement mechanism;  (2) The name and address of the Mechanism, or the name and a telephone number of the Mechanism which consumers may use without charge;  (3) A statement of any requirement that the consumer resort to the Mechanism before exercising rights or seeking remedies created by Title I of the Act; together with the disclosure that if a consumer chooses to seek redress by pursuing rights and remedies not created by Title I of the Act, resort to the Mechanism would not be required by any provision of the Act; and  (4) A statement, if applicable, indicating where further information on the Mechanism can be found in materials accompanying the product, as provided in § 703.2(c) of this section.

16 C.F.R. § 703.2(b)(1).

Here, the warranty text begins on page 10 of Mazda's warranty booklet.  *See* Ex. 8-10.  Yet, there is no mention of Mazda's arbitration program anywhere on that page.  *Id*.  Because Mazda did not disclose the required information on the page where the warranty text begins, Mazda's program is not a QDRP.

>            b.     Mazda's arbitration program will not award all of the damages authorized by Song-Beverly

Under Mazda's arbitration program, when the buyer is awarded a repurchase, the arbitrator may not award the buyer any taxes, fees, finance and other charges.  *See* Ex. ___ (BBB Auto Line Program Summary ¶ Mazda – California, p. 2, ¶ 3 ("Leased Vehicle Repurchase").

In order to be a QDRP, Mazda's arbitration program must take "into account, in rendering decisions, all legal and equitable factors" and must be willing to award consequential damages "as provided in subdivisions (a) and (b) of Section 1794 . . . ."  *See* Cal. Civ. Code § 1793.22(d)(7) (first and final sentence).  Section 1794(b) refers to the damages authorized by Civil Code section 1793.2(d)(2), which includes:

ANDERSON LAW FIRM
2070 NORTH TUSTIN AVENUE
SANTA ANA, CALIFORNIA 92705
TELEPHONE: (714) 516-2700

ANDERSON LAW FIRM
2070 NORTH TUSTIN AVENUE
SANTA ANA, CALIFORNIA 92705
TELEPHONE: (714) 516-2700

> [A]n amount equal to the actual price paid or payable by the buyer, including any charges for transportation and manufacturer-installed options . . . and including any collateral charges such as **sales tax, license fees, registration fees, and other official fees**, plus any incidental damages to which the buyer is entitled under Section 1794, including, but not limited to, reasonable repair, towing, and rental car costs actually incurred by the buyer.

*See* Cal. Civ. Code § 1793.2(d)(2)(B) (emphasis added).

Although section 1793.2(d)(2) and 1794(a) and (b) do not expressly refer to finance charges, California decisions have concluded that **finance charges** are also recoverable under these sections. *Robertson v. Fleetwood Travel Trailers*, 144 Cal.App.4th 785, 812-13 (2006) ("We conclude that for purposes of the reimbursement remedy under section 1793.2, subdivision (d)(1), the term "purchase price paid" includes finance charges incurred in conjunction with the purchase.").

Because Mazda's arbitration process does not allow for the recovery of taxes, fees, finance and *other* charges, even though they are expressly authorized by California law, Mazda's program does not qualify as a QDRP. *See* Ex. ___ (BBB Auto Line Program Summary ¶ Mazda – California, p. 2, ¶ 3 ("Leased Vehicle Repurchase").

> c. Mazda's arbitration program allows for deductions that are not allowed by the Song-Beverly Consumer Warranty Act

Under the Song-Beverly Consumer Warranty Act, if a consumer prevails and recovers restitution, the manufacturer is allowed a deduction only for the use of the vehicle up to the first repair attempt, based upon an expected lifespan of 120,000 miles. Cal. Civ. Code § 1793.2(d)(2)(C). No other deductions are permitted. *Jiagbogu v. Mercedes-Benz USA*, 118 Cal.App.4th 1235, 1243-1244 (2004) ("Section 1793.2, subdivision (d)(2)(C), and (d)(2)(A) and (B) to which it refers, <u>comprehensively address replacement and restitution</u> . . . . None contains

1   any language authorizing an offset in any situation other than the one specified [for

2   a mileage deduction]. This omission of other offsets from a set of provisions that

3   thoroughly cover other relevant costs indicates legislative intent to exclude such

4   offsets." (underline added)).

5     Despite this clear authority, Mazda's arbitration program improperly

6   calculates the mileage offset assuming that the vehicle has an expected lifespan of

7   only 100,000 miles.  *See* Ex. ___ (BBB Auto Line Program Summary ¶ Mazda –

8   California, p. 2.  The result of this deduction is that Mazda's arbitration program

9   will deduct more for mileage than is allowed by Civil Code §1793.2(d)(2)(C),

10  which requires that the lifespan be set at 120,000 miles.

11    In addition, Mazda's arbitration program improperly allows Mazda to deduct

12  for items not permitted by California law, such as for wear and tear beyond

13  whatever the arbitrator concludes is "ordinary."  *Id*.  Such deductions are improper

14  under the *Jiagbogu*.

15    In fact, Mazda is responsible for *all* wear and tear, whether ordinary or not,

16  except to the extent of Plaintiff's insurance coverage.  Comm. Code § 2510(2)

17  ("[w]here the buyer rightfully revokes acceptance he may to the extent of any

18  deficiency in his effective insurance coverage treat the risk of loss as having rested

19  on the seller from the beginning.").

20        d. Mazda's arbitration program is unwilling to arbitrate all

21         of the claims created by the Magnuson-Moss Warranty

22         Act

23    Under 16 C.F.R. § 703.5(c) and (d), Mazda's mechanism must be willing to

24  award "any remedies appropriate under the circumstances [including] any other

25  remedies available under the written warranty or the [Magnuson-Moss Warranty]

26  Act (or rules thereunder) . . . ."  16 C.F.R. § 703.5(d)(1).  The Magnuson-Moss

27  Warranty Act expressly creates claims for breach of both express and implied

28  warranties.  15 U.S.C. § 2310(d).

A N D E R S O N   L A W   F I R M
2070 NORTH TUSTIN AVENUE
SANTA ANA, CALIFORNIA 92705
TELEPHONE: (714) 516-2700

PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR JUDGMENT AND IN SUPPORT OF PLAINTIFF'S CLOSING ARGUMENT

ANDERSON LAW FIRM
2070 NORTH TUSTIN AVENUE
SANTA ANA, CALIFORNIA 92705
TELEPHONE: (714) 516-2700

1   Yet, Mazda's arbitration program will only consider claims brought under

2   written warranty and Song-Beverly.  *See* Ex. ___ (BBB Auto Line Program

3   Summary ¶ Mazda – California, p. 1 ("Eligible Claims").

4   Because Mazda's arbitration program refuses to consider claims for breach

5   of the implied warranty and the statutory claims created by the Magnuson-Moss

6   Warranty Act, the mechanism does not comply with the FTC Rules and does not

7   comply with Civil Code § 1793.22(d)(1).

8           e.    Mazda's arbitration program does not resolve disputes

9                 within 40 days

10   Part 703 requires that Mazda's mechanism render a decision within 40 days

11   after notification of the dispute.  16 C.F.R. § 703.5(d).  Part 703 allows an

12   extension of the 40 day period only if the consumer fails to promptly provide

13   certain information or the consumer made no attempt to seek redress informally

14   before commencing the arbitration.  16 C.F.R. § 703.5(e).

15   Yet, Mazda's arbitration program allows an extension of the 40-day period

16   for reasons not permitted under § 703.5(e).  Specifically, Mazda's program allows

17   a 30-day extension of time if the arbitrator requests an inspection by an

18   independent expert.  *See* Ex. ____ (BBB Auto Line Program Description and Rules

19   for California), § 22(b).  Because § 703.5(e) does not allow for such an extension,

20   Mazda's program does not qualify as a QDRP.

21           f.    Mazda's program is not willing to award attorney fees

22   Under Part 703, Mazda's arbitration program must be willing to award "any

23   remedies appropriate under the circumstances, including repair, replacement,

24   refund, reimbursement for expenses, compensation for damages, and any other

25   remedies available under the written warranty or the [Magnuson-Moss Warranty]

26   Act (or rules thereunder) . . . ."  16 C.F.R. § 703.5(d)(1).

27   The Magnuson-Moss Warranty Act allows a prevailing consumer to recover

28   attorney fees.  15 U.S.C. § 2310(d)(2).  However, Mazda's arbitration program

*does not allow* Plaintiff to recover attorney fees.  *See* Ex. ____ (BBB Auto Line Program Description and Rules for California), § 3(E).  Accordingly, Mazda's arbitration program does not qualify as a QDRP.  *Muller v. Winnebago Industries, Inc.*, 318 F.Supp.2d 844, 848-49 (2004) (concluding that the BBB Auto Line Program does not qualify because it fails to award consequential damages that are available via Magnuson-Moss under Arizona law).

Mazda may point to Civil Code section 1793.22(d)(7), which provides, in relevant part, that "[n]othing in this chapter requires that, to be certified as a qualified third-party dispute resolution process pursuant to this section, decisions of the process must consider or provide remedies in the form . . . of attorneys' fees under subdivision (d) of Section 1794 . . . ."

By its own terms, however, this provision governs "certification" by the Department of Consumer Affairs under § 1793.22(d)(9), and not Qualification under § 1793.22(d)(1) through (8).  Furthermore, these provisions allow a program to deny recovery of attorney fees *only pursuant to* Civil Code section 1794(d).

As explained above, the Magnuson-Moss Warranty Act also provides for the recovery of attorney fees pursuant to 15 U.S.C. § 2310(d)(2).  16 C.F.R. § 703.5(d)(1) expressly requires the program to authorize all remedies allowed by Magnuson-Moss, including those attorney fees.  Finally, Civil Code section 1793.22(d)(1) expressly requires compliance with the FTC Rules.  Accordingly, Mazda's program is required to award attorney fees under Magnuson-Moss, even if not under Song-Beverly.  Because it does not do so, the program is not a QDRP.

C.   Plaintiff made a written demand, and Defendant failed to repurchase or replace the vehicle

"After the occurrence of the events giving rise to the presumption established in subdivision (b) of Section 1793.22, the buyer may serve upon the manufacturer a written notice requesting that the manufacturer comply with paragraph (2) of subdivision (d) of Section 1793.2. If the buyer fails to serve the

ANDERSON LAW FIRM
2070 NORTH TUSTIN AVENUE
SANTA ANA, CALIFORNIA 92705
TELEPHONE: (714) 516-2700

1   notice, the manufacturer shall not be liable for a civil penalty pursuant to this

2   subdivision." Cal. Civ. Code § 1794(e)(3). In this case, the events giving rise to

3   the presumption in section 1793.22(b) did not occur, and thus no written notice

4   was required. Despite that, Plaintiff served one. *See* Ex. 22.

5     "If the buyer serves the notice described in paragraph (3) and the

6   manufacturer complies with paragraph (2) of subdivision (d) of Section 1793.2

7   within 30 days of the service of that notice, the manufacturer shall not be liable for

8   a civil penalty pursuant to this subdivision." Here, Mazda refused to comply. *See*

9   Ex. 23. Accordingly, a penalty is appropriate.

10     D. Civil Code § 1794(c) Penalty

11     "(a) Any buyer of consumer goods who is damaged by a failure to comply

12   with any obligation under this chapter or under an implied or express warranty or

13   service contract may bring an action for the recovery of damages and other legal

14   and equitable relief. . . . (c) If the buyer establishes that the failure to comply was

15   willful, the judgment may include, in addition to the amounts recovered under

16   subdivision (a), a civil penalty which shall not exceed two times the amount of

17   actual damages. This subdivision shall not apply . . . with respect to a claim based

18   solely on a breach of an implied warranty." Cal. Civ. Code § 1794.

19     Under section 1794(c), Gray is entitled to a civil penalty of double damages

20   if he establishes that Mazda's failure to comply with any obligation under the

21   Song-Beverly Consumer Warranty Act or any obligation imposed by a warranty or

22   service contract was willful. *Id*. The Act prohibits a civil penalty only where the

23   claim is based solely on a breach of an implied warranty. *Id*.; *See also Gomez v.*

24   *Volkswagen of America, Inc.*, 169 Cal.App.3d 921, 925 (1985).

25     "A civil penalty may be awarded if the jury determines that the manufacturer

26   knew of its obligations but intentionally declined to fulfill them. There is no

27   requirement of blame, malice or moral delinquency. However, a violation is not

28   willful if the defendant's failure to replace or refund was the result of a good faith

1   and reasonable belief the facts imposing the statutory obligation were not present."

2   *Schreidel v. American Honda Motor Co.*, 34 Cal.App.4th 1242, 1249-1250 (1995).

3          The Court may determine that Mazda acted willfully even if it was never

4   able to duplicate the problems and believed that the vehicle was repaired.

5   *Schreidel v. American Honda Motor Co.*, 34 Cal.App.4th 1242, 1254 (1995).  "The

6   basis of Honda's argument regarding its nonliability for civil penalties is the state

7   of Honda's knowledge regarding the defects.  Honda claims the record shows that

8   its mechanics were unable to duplicate the problems Schreidel described and that

9   Schreidel herself was unable to duplicate the problems for them while at the

10  dealership. . . .  What Honda ignores in the record, however, is that the problems

11  were admittedly intermittent, that [Plaintiff] had brought the problems to the

12  dealership's attention on six separate occasions, and that an independent service

13  station mechanic reported his observation of the pedal sticking problem to the

14  dealership.  Honda's attempts to duplicate the problems were minimal and, even

15  after Schreidel brought the matter to arbitration and demonstrated the problem,

16  Honda only offered to repair, not replace, the car as required by statute."  *Id*.  "The

17  customer relations department characterized her complaints as a customer problem

18  and closed its file when the dealership could not duplicate her complaints. No

19  procedure was ever instituted to replace her car."  *Id.*

20         There are three seminal decisions on civil penalties and each discusses the

21  following factors that a jury should consider in deciding whether to impose a

22  penalty:

23         (1)  The number of repair attempts that were made to address the problems,

24         (2)  Whether the repair attempts were successful,

25         (3)  Whether the manufacturer was aware of the number of repair attempts

26  and their failure,

27         (5)  Whether the manufacturer was aware of its obligations under the law,

28

ANDERSON LAW FIRM
2070 NORTH TUSTIN AVENUE
SANTA ANA, CALIFORNIA 92705
TELEPHONE: (714) 516-2700

- 24 -

(6)  Whether the manufacturer has an accurate, written policy to guiding its compliance with the law,

(7)  Whether the manufacturer offered to repurchase or replace the product or offered some other remedy (such as repair) instead, and

(8)  Whether the manufacturer attempted to blame the consumer instead of accepting responsibility for its actions.

*Oregel v. American Isuzu Motors, Inc.*, 90 Cal.App.4th 1094, 1095 (2001) (factors 1-6); *Jensen v. BMW of North America, Inc.*, 35 Cal.App.4th 135, 136 (1995) (factors 1-7); *Schreidel v. American Honda Motor Co.*, 34 Cal.App.4th 1242, 1254 (1995) (factors 1-8).

"If the [Court] chooses to impose a penalty, the amount may be up to two times the amount of damages . . . .  There is no definite or required method of determining a penalty nor is the opinion of a witness required as to the amount of a penalty." *Suman v. Superior Court*, 39 Cal.App.4th 1309, 1323 (1995).

E.    Civil Code § 3345 Enhancement

California Civil Code section 3345 applies "in actions brought by . . . senior citizens or disabled persons, as those terms are defined in subdivisions (f) and (g) of Section 1761, to redress unfair or deceptive acts or practices or unfair methods of competition."  Cal. Civ. Code § 3345(a).

"(b)  Whenever a trier of fact is authorized by a statute to impose . . . a civil penalty or . . . and the amount of the . . . penalty . . . is subject to the trier of fact's discretion, the trier of fact shall consider all of the following factors, in addition to other appropriate factors, in determining the amount . . . civil penalty . . . to impose.  Whenever the trier of fact makes an affirmative finding in regard to one or more of the following factors, it may impose . . .[a] civil penalty . . . in an amount up to three times greater than authorized by the statute . . . .:

(1) Whether the defendant knew or should have known that his or her conduct was directed to one or more senior citizens or disabled persons.

ANDERSON LAW FIRM
2070 NORTH TUSTIN AVENUE
SANTA ANA, CALIFORNIA 92705
TELEPHONE: (714) 516-2700

(2) Whether the defendant's conduct caused one or more senior citizens or disabled persons to suffer: . . . substantial loss of property . . . for personal or family care and maintenance . . . ."  Cal. Civ. Code § 3345(b).

Under Civil Code § 1761(g), "'Disabled person' means any person who has a physical or mental impairment that substantially limits one or more major life activities.  ¶ (1) As used in this subdivision, "physical or mental impairment" means any of the following:  (A) Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss substantially affecting one or more of the following body systems: . . . musculoskeletal . . . [or] skin. . . . ¶ (2) "Major life activities" means functions such as . . . walking . . . and working."

III.

PREJUDGMENT INTEREST

"Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day . . . ."  Cal. Civ. Code § 3287(a).  The legal rate of prejudgment interest on claims arising from the breach of a written agreement is ten percent.  Cal. Civ. Code § 3289(b).

Because the damages that are recoverable in this case can be computed, the damages are clearly "capable of being made certain by calculation" under section 3287.  In fact, the amount of damages is so easily computed that the Legislature has mandated that Mazda voluntarily offer that measure of damages to Gray without requiring Plaintiff to make any kind of demand.  *Krotin v. Porsche Cars North America, Inc.*, 38 Cal.App.4th 294, 300-303  (1995).

Here, the amount due to Gray can be determined by referring to the lease contract, DMV registration receipts, and rental car bills.

In *Leaf v. Phil Rauch, Inc.*, 47 Cal.App.3d 371, 375 (1975), a California Court of Appeal concluded that prejudgment interest is available on an automobile

ANDERSON LAW FIRM
2070 NORTH TUSTIN AVENUE
SANTA ANA, CALIFORNIA 92705
TELEPHONE: (714) 516-2700

- 26 -

1   rescission claim, even when the jury is required to make an offset for use and even

2   when the jury awards incidental and consequential damages.  The Court of Appeal

3   explained:

4           Under [section 3287, prejudgment interest is allowable where the
            amount due plaintiff is fixed by the terms of a contract, or is readily
5           ascertainable by reference to well-established market values . . . .

6           . . .

7           The sum paid by plaintiffs pursuant to the contract was fixed by its
            terms. Therefore, this element of damage was certain. Regarding
8           consequential damages, the evidence showed, without contradiction,
            that plaintiffs paid $67.50 for towing charges and $160.00 for rental
9           of a substitute vehicle. Thus, the amounts actually expended for these
            items were certain; defendant did not contest their reasonableness.

10          The amount of the offset allowed to defendant was determined on the
11          basis of conflicting evidence. However, that fact did not preclude
            allowance of prejudgment interest, for where the amount of a claim is
12          certain, but is reduced by reason of an unliquidated setoff, interest
            properly is allowed on the balance found to be due from the time it
13          became due.

14          Since the requirement of Civ. Code § 3287 regarding certainty of
            damages was met, plaintiffs were entitled, as a matter of right, to
15          recover prejudgment interest on the sum awarded from the time such
            sum became due.
16

17   *Id* at 376-77 (citations omitted).

18          Furthermore, the prejudgment interest authorized by this section should be

19   awarded both on the principal balance paid by Gray and any loan interest (i.e. bank

20   charges) charged by Gray's bank.  Even "in pre-lemon-law rescission action[s],

21   motor vehicle purchasers were entitled to recover prejudgment interest on monthly

22   payments which included both principal and finance charge." *Mitchell v. Blue*

23   *Bird Body Co.*, 80 Cal.App.4th 32, 36 (2000).

24          Mazda may argue that Gray's prayer for civil penalties precludes an award

25   of prejudgment interest.  It is true that Gray's complaint seeks to recover a civil

26   penalty of two times Gray's actual damages, based upon Mazda's willful violation

27   of the Song-Beverly Consumer Warranty Act.  However, it is settled that a mere

28   request for punitive damages, which cannot be calculated, does not deprive a party

ANDERSON LAW FIRM
2070 NORTH TUSTIN AVENUE
SANTA ANA, CALIFORNIA 92705
TELEPHONE: (714) 516-2700

1    of his right to interest on those damages which can be calculated.  *Track Mortgage*

2    *Group, Inc. v. Crusader Ins. Co.*, 98 Cal.App.4th 857, 864 (2002) (affirming award

3    of prejudgment interest on damages that were computable despite prayer for

4    punitive damages).[3]

5          Mazda will cite *Duale v. Mercedes-Benz USA, LLC*, 148 Cal.App.4th 718.

6    729 (2007) for the proposition that prejudgment interest is not available in lemon

7    law claims.  *Duale* concluded that prejudgment interest is not available in a claim

8    under California's automobile lemon law (Civil Code section 1793.2(d)(2)) when

9    issues relating to liability and a mileage offset against damages are disputed, even

10   if the consumer's actual damages can be made certain using a formula.

11         The Court should reject Mazda's claim for several reasons.

12         First, *Duale*'s conclusion that prejudgment interest is not available in lemon

13   law claims was recently rejected by Division Three of the Fourth District Court of

14   Appeal in *Doppes v. Bentley Motors, Inc.*, 94 Cal.Rptr.3d 797.

15         Second, this conclusion applies only on one of Gray's five causes of action.

16   Gray's remaining claims do not involve an offset under section 1793.2(d)(2).

17   Rather, the 1793.2(d)(2) remedy applies only to claims brought under Civil Code

18   section 1793.2(d).  The remedy on all of Gray's remaining claims is governed by

19   Civil Code section 1794(a) and (b).

20         Third, *Duale* contradicts other published appellate decisions and is clearly

21   wrong.  *Leaf v. Phil Rauch, Inc.*, 47 Cal.App.3d 371, 375 (1975) (allowing

22   prejudgment interest in automobile rescission action); *Mitchell v. Blue Bird Body*

23   *Co.*, 80 Cal.App.4th 32, 36 (2000).

24         Contrary to *Duale*, numerous published decisions have concluded that

25   disputes concerning the elements of liability will not preclude an award of

26   _____

27        [3] Even where interest is refused because of a large difference between the
28   damages sought and the damages recovered, it is the actual damages, and not the
     punitive damages, that the recovery is measured against.  *Polster, Inc. v. Carol*
     *Swings*, 164 Cal.App.3d 427, 435-436 (2002).

ANDERSON LAW FIRM
2070 NORTH TUSTIN AVENUE
SANTA ANA, CALIFORNIA 92705
TELEPHONE: (714) 516-2700

1  prejudgment interest.  *Leff v. Gunter*, 33 Cal.3d 508, 519-520 (1983) ("the fact that

2  the obligor denies any liability at all does not make the damages uncertain within

3  the meaning of section 3287."); *Esgro Central, Inc. v. General Ins. Co.*, 20

4  Cal.App.3d 1054, 1060 (1971); *Olson v. Cory*, 35 Cal.3d 390, 402 (1983).

5      Even more published decisions have also concluded that the presence of an

6  unliquidated offset, including an offset for use of an automobile, will not preclude

7  an award of prejudgment interest.  *Leaf v. Phil Rauch, Inc.*, 47 Cal.App.3d 371,

8  375 (1975) ("The amount of the offset allowed to defendant was determined on the

9  basis of conflicting evidence. However, that fact did not preclude allowance of

10 prejudgment interest, for where the amount of a claim is certain, but is reduced by

11 reason of an unliquidated setoff, interest properly is allowed on the balance found

12 to be due from the time it became due."); *Hansen v. Covell*, 218 Cal. 622, 629

13 (1933) ("[W]here the amount of a claim under a contract is certain and liquidated,

14 or is ascertainable but is reduced by reason of the existence of an unliquidated set-

15 off . . . , interest is properly allowed on the balance found to be due from the time it

16 became due …"); *Worthington Corp. v. El Chicote Ranch Properties, Ltd.*, 255

17 Cal.App.2d 316, 322 (1967) ("[T]he rule is also clear that where the amount of the

18 demand in itself is sufficiently certain, the fact that there is an unliquidated setoff

19 or counterclaim will not prevent an award of interest on the claim due to

20 plaintiff."); *Muller v. Barnes*, 139 Cal.App.2d 847, 850 (1956) ("[T]he general rule

21 is ... that 'where the amount of a claim under a contract is certain and liquidated, or

22 is ascertainable but is reduced by reason of the existence of an unliquidated setoff

23 or counterclaim thereto, interest is properly allowed on the balance found to be due

24 from the time it became due ...'"); *Lacy Mfg. Co. v. Gold Crown Mining Co.,* 52

25 Cal.App.2d 568, 579  (1942) ("Where the amount of a claim under a contract is

26 certain and liquidated, or is ascertainable or is reduced by reason of the existence

27 of an unliquidated set-off or counterclaim thereto, interest must be allowed on the

28 balance found to be due from the time it became due.").

ANDERSON LAW FIRM
2070 NORTH TUSTIN AVENUE
SANTA ANA, CALIFORNIA 92705
TELEPHONE: (714) 516-2700

ANDERSON LAW FIRM
2070 NORTH TUSTIN AVENUE
SANTA ANA, CALIFORNIA 92705
TELEPHONE: (714) 516-2700

1    For all of these reasons, Gray is entitled to recover prejudgment interest.

2                                          **IV.**

3                        **REMEDIES SOUGHT IN THIS CASE**

4    On each of Plaintiff's claims, Plaintiff seeks the following remedies:

5    Down payment                        $3,500.00 (Gray Decl., ¶ 26).

6    47 Payments Due of $327.01          $15,369.47 (Gray Decl., ¶ 26).

7    Purchase Price at End of Lease      $9,480.60  (Gray Decl., ¶ 26).

8    Registration Payments               $290.00 (Gray Testimony).

9    Post-Revocation Insurance on Vehicle

10                                        $828.00 (Gray Testimony).

11   Time Spent Seeking Repairs

12   (22 hours at $50.00 per hour)       $1,100.00 (Gray Testimony).

13   **Sub-Total**                       $30,568.07

14   Prejudgment Interest  (Calculable Damages times .10 divided by 12 times 23

15   months from purchase until today)   $5,858.88

16   Civil Penalties                     $_____ (Court's Discretion)

17                                          **V.**

18   **GENERAL PRINCIPLES OF LAW THAT ARE APPLICABLE TO ALL**

19                                       **CLAIMS**

20   A.      The Song-Beverly Consumer Warranty Act should be broadly

21           construe in favor of the consumer

22        The bulk of Gray's claims are brought under the "Song-Beverly Consumer

23   Warranty Act."  Cal. Civ. Code § 1790.  "Popularly known as the automobile

24   "lemon law", the Song-Beverly Act is strongly pro-consumer . . . ."  *Murillo v.*

25   *Fleetwood Enterprises, Inc.*, 17 Cal.4th 985, 990 (1998).

26        "In enacting the Song-Beverly Act and amending it over the years, the

27   Legislature's intent was to eliminate misleading 'sales gimmicks,' and to

28   ameliorate consumer frustration caused by inability to obtain promised repair

PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR JUDGMENT AND IN SUPPORT OF PLAINTIFF'S CLOSING ARGUMENT

ANDERSON LAW FIRM
2070 NORTH TUSTIN AVENUE
SANTA ANA, CALIFORNIA 92705
TELEPHONE: (714) 516-2700

1   services. The Song-Beverly Act 'is manifestly a remedial measure, intended for the

2   protection of the consumer; it should be given a construction calculated to bring its

3   benefits into action.' [Citation.]"   *Reveles v. Toyota by the Bay*, 57 Cal.App.4th

4   1139, 1157-1158 (1997).

5   　　　"The Act is intended to protect consumers and should be construed in

6   keeping with that goal.  Interpretations that would significantly vitiate a

7   manufacturer's incentive to comply with the Act should be avoided."  *Jiagbogu v.*

8   *Mercedes-Benz USA*, 118 Cal.App.4th 1235, 1244 (2004).

9   　　　B.   <u>Revocation of acceptance/pre-filing demand is not required</u>

10  　　　A consumer has no obligation to notify the manufacturer of the problems or

11  to formally revoke acceptance prior to instituting a lawsuit under Song-Beverly.

12  *Krotin v. Porsche Cars North America, Inc.*, 38 Cal.App.4th 294, 300 (1995)

13  (Consumer Warranty Law "contains no provision which requires rejection or

14  revocation of acceptance of the vehicle within a reasonable time, or any time at

15  all.")

16  　　　"[T]he Act does not require consumers to take any affirmative steps to

17  secure relief for the failure of a manufacturer to service or repair a vehicle to

18  conform to applicable warranties—other than, of course, permitting the

19  manufacturer a reasonable opportunity to repair the vehicle  . . . . In reality, . . . the

20  manufacturer seldom on its own initiative offers the consumer the options available

21  under the Act: a replacement vehicle or restitution. Therefore, as a practical matter,

22  the consumer will likely request replacement or restitution. But the consumer's

23  request is not mandated by any provision in the Act.  Rather, the consumer's

24  request for replacement or restitution is often prompted by the manufacturer's

25  unforthright approach and stonewalling of fundamental warranty problems.  An

26  automobile manufacturer need not read minds to determine which vehicles are

27  defective; it need only read its dealers' service records."  *Krotin v. Porsche Cars*

28  *North America, Inc.*, 38 Cal.App.4th 294, 302-303 (1995).

- 31 -

C.    Expert testimony not required to prove a defect

Moreover, it is not necessary to submit expert testimony concerning the existence of a defect.  Rather, the jury may infer that a defect exists based upon a part's repeated failure and replacement, even if the problem is temporarily fixed by virtue of the replacement of a defective part with a new one.  *Jensen v. BMW of North America, Inc.*, 35 Cal.App.4th 112, 135 (1995) ("the jury could reasonably infer Roseville BMW's replacement of the rotors, pads, and other brake parts provided temporary relief from the shimmy but never resolved a fundamental defect in the braking system.")

"We also reject [the manufacturer's] claim that [the plaintiff] was obliged to introduce expert testimony to prove the nonconformity. It is within the realm of common knowledge that a new car with an unremediable oil leak does not conform to its warranty, and no expert testimony is necessary to establish this proposition. The correct rule on the necessity of expert testimony has been summarized by Bob Dylan: You don't need a weatherman to know which way the wind blows." *Oregel v. American Isuzu Motors, Inc.*, 90 Cal.App.4th 1094, 1102, fn. 8 (2001) (internal citations and quotations omitted).

D.    Plaintiff need not prove the exact cause of a defect

Similarly, it is not necessary to submit evidence showing that the exact defect that is causing Gray's problems.  Rather, it is enough to submit evidence showing that the product is not operating the way a person would ordinarily expect.  *Schreidel v. American Honda Motor Co.*, 34 Cal.App.4th 1242, 1253 (1995).

In *Oregel v. American Isuzu Motors, Inc.*, 90 Cal.App.4th 1094 (2001), a consumer sued an automobile manufacturer claiming that oil was leaking from his vehicle.  The manufacturer claimed that the oil leak had been caused by a mechanic who failed to fully tighten the oil drain plug at the bottom of the engine, and thus the problem was not covered under its warranty.

ANDERSON LAW FIRM
2070 NORTH TUSTIN AVENUE
SANTA ANA, CALIFORNIA 92705
TELEPHONE: (714) 516-2700

1    Although the Plaintiff never submitted any proof of an alternative cause for

2   the oil leak, a jury entered an award in Plaintiff's favor.  On appeal, the

3   manufacturer argued that the consumer had an obligation to rebut its proof that the

4   leak was caused by a non-warrantable condition by proving that the leak was

5   caused by a warrantable condition.  The Court of Appeal rejected that claim,

6   writing:

7        "[The manufacturer] also argues it was incumbent on [the plaintiff] to prove

8   not only that the car leaked oil but also to show the cause of the leak, and that he

9   failed to meet this burden because he produced no expert testimony proving the

10   cause of the leak. . . . [P]roof that there was a persistent leak that [the dealer] could

11   not locate or repair suffices. We do not interpret the statute as depriving a

12   consumer of a remedy if he cannot do what the manufacturer, with its presumably

13   greater expertise, was incapable of doing, i.e. identify the source of the leak."

14   *Oregel*, 90 Cal.App.4th at 1102, fn. 8 (2001) (internal citations and quotations

15   omitted).

16        "[I]t would place a tremendous burden upon the purchaser of a new motor

17   vehicle to find the precise part or parts of the vehicle which were defective and

18   direct the dealer to replace them or remedy the defect.  If the operation of such

19   vehicle is mechanically defective and the automobile is returned to the dealer for

20   the purpose of correcting these defects, it is incumbent upon the dealer to find such

21   defective part or parts and replace them pursuant to the terms of the warranty or to

22   locate the assembly that has been improperly assembled and remedy the defect . . .

23   ."  *Rose v. Chrysler Motors Corp.*, 212 Cal.App.2d 755, 762-763 (1963).

24        E.   <u>When a dealership attempts to repair a problem under the warranty, it</u>

25             <u>admits that the problem is a defect and is covered by the warranty</u>

26        At trial, Mazda may argue that certain problems with the vehicle were not

27   covered by its warranty.  The Court should disregard this claim, because the

28

A N D E R S O N  L A W  F I R M
2070 NORTH TUSTIN AVENUE
SANTA ANA, CALIFORNIA 92705
TELEPHONE: (714) 516-2700

ANDERSON LAW FIRM
2070 NORTH TUSTIN AVENUE
SANTA ANA, CALIFORNIA 92705
TELEPHONE: (714) 516-2700

1   evidence demonstrated that Mazda attempted to repair the problems under the

2   warranty.

3          By attempting to perform repairs under its express warranty, Mazda has

4   admitted that the warranty covers them.  "By attempting to repair [these problems]

5   under warranty, [Defendant] admitted the defective nature of these conditions."

6   *Milicevic v. Fletcher Jones Imports, Ltd.*, 402 F.3d 912, 919 (2005).  "Defendants'

7   performance of all repairs and attempted repairs under the warranty provisions

8   constitutes an admission that all the conditions testified to, during the relevant

9   period, came within Defendants' warranties and that the failure to repair or bring

10  the conditions into conformity constitutes a breach of those warranties."  *Milicevic*

11  *v. Mercedes-Benz USA, LLC*, 256 F.Supp.2d 1168, 1179 (D. Nev. 2003) (finding

12  7).

13         The rule is the same under California's Song-Beverly Consumer Warranty

14  Act.  *Jensen v. BMW of N. Am., Inc.*, 35 Cal.App.4th 112, 137, 41 Cal.Rptr.2d 295

15  (1995) ("As we noted, each repair order was stamped with the word, 'Warranty.'

16  If the car was covered by BMW's express warranty for purposes of repair, a jury

17  could infer it was covered by the express warranty for purposes of refund or

18  replacement.")

19         F.    When a defect is reported, but not repaired, during the warranty

20                period, the warranty does not expire until the defect is repaired

21         Under the Song-Beverly Consumer Warranty Act, a warranty will not expire

22  and is extended in several cases.  "The warranty period will be extended for the

23  number of whole days that the product has been out of the buyer's hands for

24  warranty repairs.  If a defect exists within the warranty period, the warranty will

25  not expire until the defect has been fixed."  Cal. Civ. Code § 1793.1.

26         Here, Mazda may claim that the warranty expired at some point while Gray

27  was seeking repairs.  Because the evidence will show that a defect existed during

28  the warranty period and was never repaired, the warranty will never expire.

G.    Plaintiff's alleged continued use of the Vehicle did not waive
      Plaintiff's right to recover damages

"Within the context of the Uniform Commercial Code courts around the country are in general agreement that reasonable continued use of motorized vehicles does not, as a matter of law, prevent the buyer from asserting rescission (or its UCC equivalent, revocation of acceptance).  [citations omitted.]  This consensus is based upon the judicial recognition of practical realities-purchasers of unsatisfactory vehicles may be compelled to continue using them due to the financial burden to securing alternative means of transport for a substantial period of time . . . .  We believe California embraces similar views.  Nothing in the language of the either the Uniform Commercial Code or the Song-Beverly Act suggests that abrogation of the common law principles relating to continued use and waiver of a buyer's right to rescind was intended."  *Ibrahim v. Ford Motor Co.*, 214 Cal.App.3d 878, 897-898 (1989); *Jiagbogu v. Mercedes-Benz USA*, 118 Cal.App.4th 1235, 1240-41 (2004) (affirming *Ibrahim* and distinguishing between common law rescission claims and claims for restitution under the Consumer Warranty Act).

H.    Any waiver of the rights and remedies under Song-Beverly is void as
      a matter of law

"Any waiver by the buyer of consumer goods of the provisions of this chapter, except as expressly provided in this chapter, shall be deemed contrary to public policy and shall be unenforceable and void."  Cal. Civ. Code § 1790.1.  Should Mazda claim that it validly disclaimed the implied warranty or any of the damages authorized by Song-Beverly, such disclaimers are void because they are contrary to public policy.

California law expressly authorizes the recovery of incidental and consequential damages in breach of warranty cases.  See Civ. Code § 1793.2(d)(2)(B) ("Incidental damages to which the buyer is entitled under Section

1   1794, including, but not limited to, reasonable repair, towing, and rental car costs

2   actually incurred by the buyer"); Cal. Civ. Code § 1794(a), (b) (authorizing

3   Commercial Code § 2715 remedies for breach of express and implied warranties);

4   Cal. Com. Code § 2715 (authorizing incidental and consequential damages).

5       And California also voids any waiver of the rights and remedies authorized

6   by the law.  Cal. Civ. Code § 1790.1.  Because any waiver of the rights and

7   remedies authorized by California law is void and because the MMWA adopts

8   California remedies, Defendant could not have validly disclaimed incidental and

9   consequential damages.  *Gusse*, 470 F.Supp.2d at 1117.

10      I.   The presumption contained in Civil Code section 1793.22 is irrelevant

11           to this action

12      Civil Code section 1793.22 contains various presumptions concerning what

13  constitutes a "reasonable number of repair attempts."  It is not uncommon for

14  automobile manufacturers to request that the Court consider the presumption, even

15  though Gray is not asserting it.  The manufacturer then argues that since the

16  presumption does not apply, Gray has not made a reasonable number of repair

17  attempts or that the manufacturer acted in good faith.

18      In *Jiagbogu v. Mercedes-Benz USA*, 118 Cal.App.4th 1235, 1245 (2004), the

19  Court of Appeal concluded that giving such an instruction to a jury is improper

20  when the consumer is not asserting the presumption:  "An instruction on the

21  inapplicable presumption was neither required nor justified.  ¶  Not only did the

22  trial court rule correctly in refusing to give it, giving it would have constituted

23  serious error."  *Id*.  For the same reason, it would be improper to consider the

24  presumption in this case.

25      J.   Mazda is not entitled to an equitable offset against Plaintiff's damages

26      Mazda may argue that it is entitled to an equitable offset for Gray's use of

27  the Vehicle or that it is entitled to a reduction of Gray's damages under other

28

A N D E R S O N   L A W   F I R M
2070 NORTH TUSTIN AVENUE
SANTA ANA, CALIFORNIA 92705
TELEPHONE: (714) 516-2700

ANDERSON LAW FIRM
2070 NORTH TUSTIN AVENUE
SANTA ANA, CALIFORNIA 92705
TELEPHONE: (714) 516-2700

1  equitable principles, such as comparative negligence, failure to mitigate, etc.  This

2  claim has no merit.

3        "Section 1793.2, subdivision (d)(2)(C), and (d)(2)(A) and (B) to which it

4  refers, comprehensively address replacement and restitution; specified predelivery

5  offset; sales and use taxes; license, registration, or other fees; repair, towing, and

6  rental costs; and other incidental damages. None contains any language authorizing

7  an offset in any situation other than the one specified. This omission of other

8  offsets from a set of provisions that thoroughly cover other relevant costs indicates

9  legislative intent to exclude such offsets." *Jiagbogu v. Mercedes-Benz USA*, 118

10  Cal.App.4th 1235, 1243-1244 (2004).

11        The equitable doctrines of comparative negligence, failure to mitigate, and

12  others do not apply to Song-Beverly claims because "[P]rinciples of equity

13  [cannot] be used to avoid a statutory mandate."  *Id*. at 1244.

14  DATED:  July 7, 2009

15                               ANDERSON LAW FIRM
                                MARTIN W. ANDERSON
16                               LUCY KASPARIAN

17

18                        By:

19                               MARTIN W. ANDERSON
                                Attorneys for Plaintiff Terry Gray

20

21

22

23

24

25

26

27

28