1
2
3
4
5
6
7
8     **UNITED STATES DISTRICT COURT**
9     **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
10
11    Terry Gray ,                          )          **SACV 08-00279-JVS(ANx)**
                                            )
12                    Plaintiff,            )          **COURT'S FINDINGS OF FACT**
                                            )          **AND CONCLUSIONS OF LAW**
13           vs.                            )
                                            )
14    Mazda Motor of America, Inc., et al., )
                                            )
15                                          )
                                            )
16                    Defendant(s)          )
                                            )
17    _____  )
18
19
20
21
22
23
24
25
26
27
28

1    SANTA ANA, CALIFORNIA; THURSDAY, JULY 9, 2009; 9:30 A.M.

2        THE COURT:  PURSUANT TO RULE 52 OF THE FEDERAL

3    RULES OF CIVIL PROCEDURE, I'M PREPARED TO ENTER ORALLY MY

4    FINDING OF FACTS AND CONCLUSIONS LAW.  I WILL ALSO HAVE THE

5    TRANSCRIPT BOOKLET PREPARED, AND I WILL SIGN IT.

6        I HAVE CONSIDERED THE EVIDENCE OFFERED AT TRIAL,

7    INCLUDING THE WRITTEN DECLARATIONS PROVIDED BY EACH OF THE

8    WITNESSES, AS WELL AS THE FURTHER DIRECT AND

9    CROSS-EXAMINATION TAKEN AT TRIAL.

10        I HAVE ALSO CONSIDERED THE TRIAL BRIEFS, THE

11    SUPPLEMENTAL BRIEFS ON DAMAGES AND OTHER ISSUES THAT WERE

12    PRESENTED PRIOR TO TRIAL, AND I HAVE ALSO CONSIDERED

13    PLAINTIFF'S TRIAL BRIEF IN SUPPORT OF MOTION FOR JUDGMENT

14    AND IN SUPPORT OF PLAINTIFF'S CLOSING ARGUMENT THAT WAS

15    FILED YESTERDAY.

16        I WANT TO BEGIN WITH SOME OBSERVATIONS ABOUT THE

17    EVIDENCE AND WHETHER, IN GENERAL, PLAINTIFF CARRIED ITS

18    BURDEN.  SECOND, I WANTED TO TURN TO THE FACTUAL ISSUES IN

19    THE CASE; AND, THIRD, I'LL EXPRESS MY CONCLUSIONS OF LAW.

20        I FIND THAT IN SEVERAL PARTICULARS, PLAINTIFF

21    COULD HAVE OFFERED STRONGER EVIDENCE:  NUMBER ONE, PLAINTIFF

22    MIGHT HAVE CALLED SHARON GRAY.  I AGREE THAT WITH RESPECT TO

23    THE ISSUES OF THE TIRES, PLAINTIFF WAS ENTITLED TO REST ON

24    THE MAZDA PAPERWORK THAT SHOWED ON, AT LEAST, SEVEN

25    OCCASIONS THAT THE TIRES WERE RATED IN THE GREEN ON MAZDA'S

4

1    RATING SCHEDULE.  HOWEVER, IT WAS SHARON GRAY WHO HAD THE

2    CONVERSATIONS WITH THE MAZDA DEALERS.  IT WAS SHARON GRAY

3    WHO WAS ALLEGEDLY TOLD THAT HER SON ENGAGED IN ROUGH -- THE

4    WORD BY THE MAZDA PERSON MAY HAVE BEEN "VIGOROUS."  ANYWAY,

5    CONVEYED THAT HE WAS DRIVING THE CAR HARD.  IT WAS TO SHARON

6    GRAY TO WHOM THE OFFER WAS CONVEYED TO REPLACE THE SWAY BAR

7    WITH THE ORIGINAL BAR.  AND MOST IMPORTANT TO ME, DURING THE

8    SIX-MONTH PERIOD OF JAMES GRAY'S SUSPENSION, SHE WAS ONE OF

9    THE TWO PEOPLE WHO DROVE THE CAR.  WE HAVE NO EVIDENCE FROM

10   ANYONE, ALTHOUGH THE CAR WAS DRIVEN DURING THAT PERIOD, THAT

11   THERE WAS ANY INDICATION OF CLUNKING OR STALLING OR OTHER

12   DEFECTS.

13            I ALSO FIND SIGNIFICANT THAT THE CAR WAS NOT

14   AVAILABLE AT TRIAL.  IT WOULD HAVE OFFERED MR. CALEF THE

15   OPPORTUNITY TO RECREATE THE CONDITIONS THAT HE CREATED AT

16   THE JULY 2007 VISUAL INSPECTION.  NAMELY, AT THAT OCCASION,

17   HE TESTIFIED AND HE STATED IN HIS DECLARATION THAT HE PUSHED

18   ON THE LEFT REAR FENDERS AND WAS ABLE TO INDUCE THE CLUNKING

19   NOISE.

20            I ALSO TAKE INTO ACCOUNT THE QUALITY OF THE EXPERT

21   TESTIMONY OFFERED IN THIS CASE.  I FOUND DAN CALEF NOT TO BE

22   CREDIBLE ON A NUMBER OF FRONTS AND I GAVE HIS TESTIMONY VERY

23   LITTLE WEIGHT:  NUMBER ONE, HE NEVER DROVE THE VEHICLE.  HE

24   HAD ADEQUATE OPPORTUNITY TO DO SO.  I FIND INCREDIBLE HIS

25   EXPLANATION FOR NOT DRIVING THE CAR.  HIS EXPLANATION WAS TO

1  THE EFFECT THAT THE CLUNKING NOISE, THE SYMPTOM OF WHAT HE

2  CONSIDERED TO BE A DEFECT, OCCURRED SO INFREQUENTLY THAT IT

3  WAS A WASTE OF HIS TIME TO ATTEMPT TO DRIVE THE CAR AND SEE

4  IF THE CONDITION COULD BE RECREATED.  I ASKED HIM THIS SET

5  OF QUESTIONS AT PAGES 180 AND 181 OF THE ROUGH, ON THE FIRST

6  DAY OF TRIAL:

7       QUESTION:  *YOU HAVE NEVER MADE AN ATTEMPT TO FIND*

8  *OUT WHAT CONDITIONS, REAL CONDITIONS ON THE ROAD CREATE THE*

9  *NOISE?*

10       ANSWER:  *I DON'T HAVE TO.  I DON'T HAVE TO KNOW --*

11  *THE ROUGH IS A LITTLE ROUGH HERE.*

12       *I DON'T HAVE TO KNOW HOW I WOULD DO THAT.  I MEAN,*

13  *I GOT TESTIMONY AND SUCH THAT IT IS -- THAT'S A VERY VERY*

14  *DIFFICULT THING TO DO, BECAUSE IT ACTUALLY TAKES A SERIES OF*

15  *EVENTS, AND I DON'T KNOW THAT.*

16       QUESTION:  *DO YOU THINK YOU COULD HAVE INDUCED THE*

17  *CONDITION HAD YOU CONDUCTED A ROAD TEST?*

18       ANSWER:  *NO, I DON'T.  NO, I DON'T.*

19       QUESTION:  *WHY?*

20       ANSWER:  *AGAIN, IT TAKES A SERIES OF EVENTS, AND I*

21  *DON'T KNOW WHAT THOSE EVENTS ARE.  IT'S WHAT'S GOING TO*

22  *CAUSE THE BAR TO MOVE TOWARDS THE -- ACTUALLY TOWARDS THE*

23  *RIGHT SIDE OF THE VEHICLE.  AND THEN, WHEN IT'S GOING TO*

24  *CREATE A MOTION, THAT IS GOING TO CAUSE THE IMPACT.*

25       HE WENT TO TESTIFY, BASICALLY, THAT IT WASN'T

6

1  WORTH HIS WHILE TO SPEND THE TIME AND EFFORT TO SEE IF HE

2  COULD INDUCE THE CONDITION.  I DON'T FIND THAT POSITION

3  CREDIBLE, OR I FIND THAT IT CAUSES ME TO DRAW AN INFERENCE

4  ADVERSE TO THE EXISTENCE OF A DEFECT.  IF THE SYMPTOM OF THE

5  DEFECT -- NAMELY, THE CLUNKING NOISE -- OCCURRED SO

6  INFREQUENTLY THAT MR. CALEF WASN'T WILLING TO SEND THE TIME

7  TO SEE IF HE COULD EXPERIENCE OR INDUCE THAT CONDITION, I

8  INFER THAT IT OCCURRED VERY RARELY.

9        SECOND, HE MADE NO ATTEMPT TO CAPTURE THE SOUND.

10  I DON'T ACCEPT AS CREDIBLE HIS EXPLANATION THAT AUDIO

11  TECHNOLOGY IS SUCH THAT EQUIPMENT DOESN'T EXIST TODAY THAT

12  HE COULD DO THAT, OR THAT THE NOISE IS SUCH THAT IT COULDN'T

13  BE SCREENED OUT FROM THE AMBIENT NOISE.

14        THREE, I FIND INCREDIBLE HIS TESTIMONY THAT THE

15  CAR HAS NO VALUE.  IT'S PLAIN THAT THE CAR HAD SOME VALUE,

16  ARGUABLY DIMINISHED VALUE, BECAUSE IT WAS DRIVEN AND IN FACT

17  USED FOR A NUMBER OF MONTHS BUT BEFORE AND AFTER MR. JAMES

18  GRAY SUSPENSION.

19        I ALSO GIVE PARTICULAR SIGNIFICANT TO HIS FAILURE

20  TO DRIVE THE CAR, BECAUSE HE NEVER ATTEMPTED TO EXPERIENCE

21  ANY STALLING, HESITATION, OR OTHER CONDITION SIMILAR TO

22  THOSE TESTIFIED TO BY MR. JAMES GRAY.

23        FOURTH, I FIND SOME SIGNIFICANCE IN THE FACT THAT

24  ALTHOUGH HE HAD VIDEO AND OTHER TOOLS AVAILABLE TO HIM IN

25  OTHER CASES AND USED THEM, HE DIDN'T IN THIS CASE.  I

1  ACKNOWLEDGE THAT THE SAN DIEGO CASE MAY HAVE BEEN A STRONGER

2  CASE FOR THE USE OF VIDEO TO ESTABLISH THAT THE FAMILY THAT

3  OWNED THE CAR WERE SO HEAVY THAT THEY CAUSED THE CAR TO

4  ACTUALLY TOUCH THE GROUND.  NEVERTHELESS, IT'S CLEAR TO ME

5  THAT HE KNEW OF THE EXISTENCE OF VIDEO AND AUDIO TOOLS AND

6  CHOSE NOT TO USE THEM HERE.

7      FIFTH, I FIND INCREDIBLE HIS THEORY THAT MAZDA

8  BROKE A WIRE IN ORDER TO FIX THE STALLED CONDITION.  THERE

9  IS NO EVIDENTIARY SUPPORT FOR THAT.  I JUST FOUND THAT TO BE

10  BEYOND UNSUPPORTED.  I FOUND IT TO BE FANCIFUL.

11      BEYOND THAT JUDGING MR. CALEF'S DEMEANOR AND

12  ATTITUDE WHILE TESTIFYING, I FOUND HIM TO BE AN ADVOCATE AND

13  NOT AN INDEPENDENT PROFESSIONAL ANALYST OF THE PROBLEM THAT

14  HE WAS ASKED TO ADDRESS.  THAT WAS INDICATED IN HIS DEMEANOR

15  AND IT WAS ALSO INDICATED IN THE DISMISSIVE LANGUAGE HE USED

16  IN EXPRESSING HIS CRITICISMS OF THE MAZDA'S EXPERTS.  HE

17  LABELED MR. TARVER'S OPINION "HOGWASH."  HE LABELED

18  MR. BUTTS' TESTIMONY, THE DESIGNER OF THE -- WELL, THE

19  SUPERVISORY DESIGNER, IF YOU WILL, OF THE SWAY BAR FOR

20  MAZDA, HE LABELED THAT TESTIMONY AS "LAUGHABLE."  THAT MODE

21  OF EXPRESSION AND HIS DEMEANOR WERE NOT CONSISTENT WITH THE

22  PRESENTATION OF A INDEPENDENT PROFESSIONAL ANALYST.  I ALSO

23  NOTE THAT HIS TESTIMONY OF EXPERIENCE IS HEAVILY WEIGHTED TO

24  TESTIFYING FOR PLAINTIFFS IN LEMON LAW CASES.

25      FOR ALL THOSE REASONS, I GAVE HIS TESTIMONY VERY

1  LITTLE WEIGHT IN THIS CASE.

2  SECOND, I INDICATED I WANTED TO TURN TO THE FACTS

3  OF THE CASE.  TURNING TO THE STALLED CONDITION IN

4  PARAGRAPH 4 OF HIS DECLARATION, MR. JAMES GRAY STATES THAT

5  IT FIRST OCCURRED IN SEPTEMBER OF 2007.  HE STATES THAT AT

6  PARAGRAPH 4.  HE ALSO STATES WITHOUT SPECIFICITY A DATE AND

7  WITHOUT APPARENT ABILITY TO GIVE SPECIFICITY OF DATES THAT

8  IT OCCURRED AFTER THAT.  THE CAR WAS FIRST TAKEN TO MAZDA OF

9  ORANGE ON FEBRUARY 25, 2008 TO ADDRESS THE SITUATION.  IT

10 WAS TAKEN BACK, LESS THAN A MARCH LATER, ON MARCH 24TH, 2008

11 TO ADDRESS THE CONDITION.  IT'S SIGNIFICANT TO ME THAT THE

12 CAR WASN'T TAKEN TO MAZDA OF ORANGE OR ANY MAZDA DEALER

13 EARLIER.  IT'S SIGNIFICANT TO ME THAT WHEN THE DEMAND LETTER

14 WRITTEN BY MS. KASPARIAN WAS TENDERED, EXHIBIT 22, SHE MADE

15 NO MENTION OF THE CONDITION.

16 I BELIEVE THAT A STALLED CONDITION OCCURRED, BUT I

17 ALSO FIND, BASED ON MR. TARVER'S TESTIMONY, THAT IT WAS

18 REPAIRED AND IN THIS INSTANCE, IN FACT, REPAIRED WITHIN 30

19 DAYS.  I CREDIT AND ACCEPT HIS TESTIMONY THAT THE CAUSE OF

20 THE STALLED CONDITION WAS A BROKEN WIRE; THAT THE WIRE WAS

21 IDENTIFIED AND REPAIRED.

22 AS I INDICATED EARLIER, I EXPRESSLY REJECT THE

23 OPINION OF MR. CALEF THAT A MAZDA TECHNICIAN ESSENTIALLY

24 BROKE A WIRE TO CREATE A PHANTOM FIX.  THERE WAS NO FURTHER

25 REPORT OF STALLING AFTER THE MARCH 24TH VISIT.

```
 1              THERE WAS A FURTHER VISIT TO THE MAZDA DEALERSHIP
 2    ON JUNE 13, 2008 TO PRESENT THE CONDITION OF ENGINE "OUT"
 3    LIGHT.  NO REFERENCE IS MADE TO A STALL, AND I CONCLUDE ON
 4    THE BASIS OF THIS RECORD THAT THE STALL CONDITION DID NOT
 5    EXIST AS OF THAT TIME.  I THINK IN THIS INSTANCE, IN
 6    PARTICULAR, IT'S SIGNIFICANT THAT, ONE, EXHIBIT 34, DOES NOT
 7    MAKE ANY REFERENCE TO A STALL; AND TWO, IF THERE HAD BEEN
 8    REFERENCED TO A DISCUSSION OF A STALL, WE DON'T HAVE THE
 9    BENEFIT OF MS. SHARON GRAY'S TESTIMONY AS TO WHAT WAS
10    CONVEYED TO THE MAZDA DEALERSHIP ON JUNE 13, 2008.  IT IS
11    SIGNIFICANT THAT THE ENGINE "OUT" LIGHT OR THE ENGINE CHECK
12    LIGHT, THE TESTIMONY INDICATES, DID NOT REAPPEAR.
13              I CONCLUDE THAT MAZDA, IN FACT, FIXED THIS DEFECT
14    AND DID SO IN A TIMELY FASHION AFTER REASONABLE NUMBER OF
15    OPPORTUNITIES TO DO SO.  I FIND NO BASIS FOR LIABILITY,
16    EITHER INDIVIDUALLY OR COLLECTIVELY, UNDER ANY AUTHORITIES
17    ADVANCED WITH RESPECT TO THE TREATMENT OF THE STALLING
18    CONDITION.  I FIND SIGNIFICANT THAT ALTHOUGH THERE'S
19    TESTIMONY IN THE WRITTEN TESTIMONY, FURTHER HESITATIONS AND
20    SO ON, THAT NO FURTHER RECORD WAS MADE TO TAKE THE CAR TO
21    MAZDA, OR ANY OTHER DEALERSHIP.  I GIVE LITTLE WEIGHT TO
22    THAT TESTIMONY FOR THAT REASON.
23              TURNING TO THE OTHER ALLEGED DEFECT, THE DEFECT IN
24    THE SWAY BAR, THE RECORD ESTABLISHES THAT ON SEVEN DIFFERENT
25    OCCASIONS, THE CAR WAS TAKEN TO THE ORIGINAL MAZDA
```

1  DEALERSHIP FROM WHICH IT WAS PURCHASED SEEKING REPAIRS TO

2  CURE WHAT WAS DESCRIBED VARIOUSLY AS A CLUNKING NOISE MAKING

3  CONDITION.  THE RECORD INDICATES THAT ON EACH OCCASION,

4  MAZDA TOOK SOME ACTION AND THAT EACH OCCASION SOME

5  IMPROVEMENT WAS MADE.  FROM THE FACTS AND HERE I INFER THAT

6  AT LEAST FOR A BRIEF PERIOD BETWEEN VISITS, THE CAR WAS

7  BROUGHT BACK INTO COMPLIANCE AND CONFORMITY WITH WARRANTY

8  BUT DID NOT REMAIN SO.  THAT IS EVIDENCE, AT LEAST IN PART

9  BY THE TESTIMONY OF MR. JAMES GRAY, WHICH WAS READ INTO THE

10  RECORD FROM HIS DEPOSITION AT PAGE 54:

11       QUESTION:  *OKAY.  BETWEEN THE LAST VISIT*

12  *FEBRUARY 24, 2007 AND OCTOBER 8, 2007, DID YOU OBSERVE ANY*

13  *NOISE FROM THE REAR?*

14       ANSWER:  *YES.*

15       QUESTION:  *YOU DID?*

16       ANSWER:  *YES.*

17       QUESTION:  *OKAY.  DID YOU COMPLAIN ABOUT IT TO*

18  *ANYBODY?*

19       ANSWER:  *TO MY DAD.*

20       QUESTION:  *IS THERE -- CAN YOU EXPLAIN WHY THERE'S*

21  *NOTHING WRITTEN HERE ABOUT THE REAR NOISE.*

22       ANSWER:  *I ONLY HEARD IT A COUPLE TIMES WHEN IT*

23  *WENT AWAY.*

24       QUESTION:  *YOU THOUGHT IT WAS INSUBSTANTIAL?*

25       ANSWER:  *YEAH.*

*DEBORAH D. PARKER, U.S. COURT REPORTER*

```
1              THEN, IT CONTINUES ON TO PAGE 55:

2              QUESTION:  WAS IT THE SAME NOISE?

3              ANSWER:  YEAH.

4              QUESTION:  DID IT BOTHER YOU?

5              ANSWER:  IT DIDN'T BOTHER ME, BECAUSE IT WASN'T

6    DOING IT ALL THE TIME.

7              QUESTION:  ON BUMPS?

8              ANSWER:  YEAH.

9              I THINK THAT'S ONE OF SEVERAL AFFIRMATIVE

10   INDICATIONS IN THE RECORD THAT MAZDA'S CORRECTIVE ACTION DID

11   HAVE SOME EFFECT ON THE DEFECT.

12             THE FINAL VISIT WAS IN JANUARY 2008.  ON THAT

13   OCCASION -- I BELIEVE IT WAS THAT OCCASION.  IT COULD HAVE

14   BEEN THE PREVIOUS ONE -- THAT THE BAR WAS WRAPPED WITH

15   TEFLON.  THE EVIDENCE INDICATES THAT THAT FIX SUBSTANTIALLY

16   REDUCED THE OCCURRENCE OF A CLUNKING NOISE AND THAT INCIDENT

17   OF CONTACT BETWEEN THE BRACKET FOR THE BUSHING AND THE BAR

18   ITSELF.  I FIND SIGNIFICANT THAT AFTER MARCH 24, 2008, NO

19   FURTHER COMPLAINTS WERE MADE WITH RESPECT TO THE CONDITION.

20             I'M SORRY.  LET ME WITHDRAW THAT REMARK.  THAT'S

21   INACCURATE.

22             I DRAW A GREAT DEAL FROM THE PHYSICAL EVIDENCE IN

23   THIS CASE.  THE TESTIMONY WAS THAT IF THERE WERE RECENT

24   CONTACT BETWEEN THE BRACKET AND THE BAR THAT THERE WOULD BE

25   SILVER GRAY METAL PRESENT.  THE BAR, ITSELF, WAS COVERED
```

1    WITH 30 TO 40-MICRONS OF A COATING MATERIAL THAT'S RED.  IT

2    IS EVIDENT FROM THE SWAY BAR THAT THERE HAD BEEN CONTACT ON

3    THE LEFT SIDE.  THERE'S A CHUNK THAT'S SOMEWHAT OVAL THAT I

4    WOULD ESTIMATE TO BE ABOUT A QUARTER OF AN INCH WIDE AND

5    MAYBE FIVE-EIGHTHS OF AN INCH LONG.

6         I'M OBSERVING THAT AT THIS TIME AND THAT AREA IS

7    RUSTED OVER.  THERE MAY BE IN PART SOME PAINT TRANSFER.  BUT

8    BY IN LARGE, IT IS RUSTED OVER.  FROM THE PHYSICAL EVIDENCE,

9    I DRAW THE CONCLUSION THAT AFTER THE LAST FIX, THE

10   SUBSTANTIAL OCCURRENCE OF CONTACT BETWEEN THE BRACKET AND

11   THE BAR WAS MINIMAL.  THERE IS NO SILVER GRAY MATERIAL THERE

12   ANYWHERE.

13        ON THE BRACKET THAT FACES THE LEFT SIDE, THERE IS

14   I WOULD SAY WHAT I HAVE DESCRIBED AS A QUARTER MOON ABOVE

15   THE TOP OF THE BUSHING THAT IS RUSTED.  IN A VERY SMALL PART

16   AT THE BOTTOM, THERE IS PEAKING THROUGH A LITTLE BIT OF

17   SILVER.  JUST A TINY BIT, A COUPLE OF FLECKS.  I INFER FROM

18   THE PHYSICAL EVIDENCE, IF AFTER THE INSTALLATION OF THE

19   TEFLON CONTACT WAS CONTINUING TO OCCUR, IT WAS EXTREMELY

20   INFREQUENT AND MINIMAL.  MR. BUTTS TESTIFIED THAT IN HIS

21   VIEW THAT THE TEFLON FIX REPAIRED -- WAS A FIX THAT WOULD

22   REPAIR THE PROBLEM FOR THE LIFE OF THE VEHICLE.  HE WAS

23   CANDID IN STATING THAT HE COULD NOT BE 100 PERCENT SURE.  I

24   BELIEVE THAT HIS CANDOR ADDS TO HIS CREDIBILITY AND THE

25   CREDIBILITY OF HIS OVERALL CONCLUSIONS.

1          I FIND THAT THE TEFLON FIX, IN FACT, REPAIRED THE

2     CONDITION.  I DON'T THINK IT'S DISPOSITIVE WHETHER THAT FIX

3     WILL LAST FOR THE LIFE OF THE VEHICLE.  THAT FIX HAS PUT THE

4     VEHICLE IN CONFORMITY WITH THE WARRANTY.

5          IT IS CLEAR THAT OVER THE LIFE OF THE VEHICLE, OR

6     OVER THE PERIOD IN WHICH THE GRAYS HAVE OWNED THE VEHICLE,

7     THAT THE INCIDENT AND EXTENT OF THE NOISE HAS DIMINISHED.

8     FOR EXAMPLE, TERRY GRAY TESTIFIED THAT HE LAST DROVE THE CAR

9     ON MARCH 2008 WITH HIS SON, ONCE HE GOT OFF SUSPENSION AND

10    NO NOISE WAS HEARD.  I GIVE WEIGHT TO THE TESTIMONY OF

11    MR. JAMES GRAY IN THE PASSAGE THAT HAS BEEN QUOTED SEVERAL

12    TIMES, BUT I BELIEVE IT'S WORTH QUOTING AGAIN IN MY

13    SUMMATION OF THE EVIDENCE, AT 122, -23 OF THE ROUGH FROM

14    TUESDAY, THE 6TH OF JULY:

15          QUESTION:  *OKAY.  WHEN DID YOU LAST HEAR THE*

16    *CLUNKING NOISE IN THE REAR?*

17          ANSWER:  *A COUPLE OF WEEKS AGO.*

18          *WHAT DID YOU HEAR?*

19          QUESTION:  *WHAT DID YOU HEAR?*

20          ANSWER:  *IT WASN'T A LOUD.  IT WAS JUST LIKE, LIKE*

21    *A LITTLE CLUNK.  IT WASN'T LIKE TOO DISTRACTING.*

22          AND THEN, FURTHER ON:  *HOW FREQUENTLY HAVE YOU*

23    *HEARD THE CLUNKING NOISE FROM THE TIME YOU GOT YOUR LICENSE*

24    *BACK TO THE PRESENT?*

25          *NOT VERY OFTEN.*

14

```
 1              QUESTION:  WHAT'S "NOT VERY OFTEN"?  WHAT'S YOUR
 2    BEST ESTIMATE?
 3              ANSWER:  PRETTY RARELY.
 4              QUESTION:  AND HOW DO YOU COMPARE THE MAGNITUDE OF
 5    THE SOUND OVER THE PERIOD OF TIME COMPARED TO THE NOISES YOU
 6    FIRST HEARD WHEN YOU GOT THE CAR?
 7              ANSWER:  IT'S DAMPERED.
 8              QUESTION:  IT'S DAMPERED QUITE A BIT?
 9              ANSWER:  YEAH.
10              I CONCLUDE THAT THE LAST FIX APPLYING THE TEFLON
11    TAPE REPAIRED THE DEFECT AND BROUGHT IT INTO SUBSTANTIAL
12    CONFORMITY WITH THE WARRANTY.  I GIVE WEIGHT TO MR. BUTTS'
13    TESTIMONY NOTING THAT THAT FIX ACCOMPLISHED TWO THINGS:
14    ONE, IT CAUSED A TIGHTER HOLD BETWEEN THE CLAMP, THE BUSHING
15    AND THE BAR TO INHIBIT MOVEMENT, TO HOLD IT TIGHTLY AND IT
16    ALSO INHIBITED -- IN ADDITION TO HAVING A TIGHTENING EFFECT,
17    IT INHIBITED THE LATERAL MOVEMENT OF THE BUSHING.
18              I WISH TO MAKE SEVERAL OTHER FACTUAL FINDINGS:
19    NUMBER ONE, IF I WERE TO FIND LIABILITY UNDER ANY THEORY
20    THAT WOULD SUPPORT A CIVIL PENALTY FOR WILLFULNESS, I WOULD
21    NOT IMPOSE A CIVIL PENALTY.  I FIND THAT, ALTHOUGH AT TIMES
22    THE CONDUCT OF MAZDA COULD BE CRITICIZED -- FOR EXAMPLE, THE
23    EFFECTIVENESS OF DOCUMENTING THE CONVERSATIONS WITH REGARD
24    TO REPURCHASE -- MAZDA AND ITS TECHNICIAN AND ADMINISTRATORS
25    AT NO TIME ACTED IN A WILLFUL FASHION.  THE RECORD EVIDENCE
```

*DEBORAH D. PARKER, U.S. COURT REPORTER*

1    IS THAT EACH TIME THE CAR WAS BROUGHT IN, A GOOD FAITH

2    EFFORT WAS MADE TO ADDRESS THE PROBLEMS AND THAT THERE WAS

3    AN EFFORT TO MINIMIZE THE DAYS THAT THE CAR WAS IN THE SHOP.

4    THAT SAID, THE CAR WAS STILL IN THE SHOP FOR A PERIOD --

5    TOTAL PERIOD OF 22 DAYS.

6         I DON'T FIND THAT THE MAZDA PEOPLE WERE

7    UNCONCERNED OR DISREGARDED ANY OF THE LEGAL RIGHTS OF THE

8    GRAYS WITH RESPECT TO THE VEHICLE AND THE RIGHTS WHICH

9    ATTEND THEIR OWNERSHIP OF THE VEHICLE.

10        IF I WERE TO AWARD A CIVIL PENALTY AND WERE ASKED

11   TO GIVE CONSIDERATION AS TO WHETHER A FURTHER CIVIL PENALTY

12   OUGHT TO BE IMPOSED BY TREBLING UNDER SECTION 3345 OF THE

13   CIVIL CODE, I WOULD DECLINE TO DO SO.  I WILL ASSUME FOR THE

14   PURPOSE OF THIS ANALYSIS THAT UNDER SECTION 1761 OF THE

15   CIVIL CODE, MR. GRAY IS A DISABLED PERSON BECAUSE OF THE

16   AMPUTATION WHICH HE EXPERIENCED A NUMBER OF YEARS AGO AS A

17   RESULT OF AN AUTO ACCIDENT.  HAVING SAID THAT, I DON'T

18   BELIEVE THAT ANY OF THE FACTUAL FINDINGS COULD BE MADE THAT

19   WOULD ALLOW THE COURT IN ITS DISCRETION TO MAKE A FURTHER

20   TREBLING AWARD BASED ON THAT FACT.

21        IN ORDER TO DO SO, THE COURT MUST MAKE ONE OF

22   THREE AFFIRMATIVE FINDINGS, BEFORE IT'S ENTITLED -- THE

23   FACT-FINDER IS ENTITLED TO EXERCISE ITS DISCRETION TO MAKE

24   SUCH AWARD.  THE FIRST FACTOR IS WHETHER THE DEFENDANT KNEW

25   OR SHOULD HAVE KNOWN THAT HIS OR HER CONDUCT WAS DIRECTED TO

1  ONE OR MORE SENIOR CITIZENS OR DISABLED PERSONS.  I FIND

2  THAT THE PREPONDERANCE OF THE RECORD ESTABLISHES THAT MAZDA

3  DID NOT KNOW AND SHOULD NOT HAVE KNOWN THAT MR. GRAY WAS A

4  DISABLED PERSON.  THE TESTIMONY WAS THAT HE DIDN'T BELIEVE

5  THAT MAZDA KNEW HE WAS DISABLED, ALTHOUGH HE HAD A LIMP.

6  THE TESTIMONY WAS FURTHER TO THE EFFECT THAT HE MADE HIS

7  BEST EFFORT TO CONCEAL THE FACT THAT HE HAD THAT DISABILITY;

8  NAMELY, WERE A PROTHESIS AS A RESULT OF AMPUTATION.

9       I FIND BY A PREPONDERANCE OF THE EVIDENCE THAT THE

10  FIRST ELEMENT COULD NOT BE FOUND ON THIS RECORD.

11       THE SECOND ELEMENT GOES INTO A NUMBER OF FACTORS

12  THAT WOULD ENCOMPASS ABUSE OF A CONDITION THAT A DISABLED OR

13  SENIOR PERSON MIGHT HAVE HAD.  PLAINTIFF ARGUED THAT THE

14  ONLY RELEVANT FACTOR WOULD BE WHETHER THE DEFENDANT CAUSED

15  ONE OR MORE SENIOR CITIZENS OR DISABLED PERSONS TO SUFFER A

16  LOSS FOR PERSONAL OR FAMILY CARE OR MAINTENANCE.  I DON'T

17  BELIEVE THAT THE LOST HERE CONSTITUTES A LOSS FOR FAMILY

18  CARE OR MAINTENANCE, EVEN IF I CAME TO THE CONCLUSION THAT

19  PLAINTIFF WAS ENTITLED TO RECOVER AND WAS ENTITLED TO

20  PAYMENT OF RESTITUTION.

21       THE THIRD FACTOR THAT ONE MAY CONSIDER IS WHETHER

22  ONE OR MORE SENIOR CITIZENS BASICALLY SUFFERED SUBSTANTIAL

23  PHYSICAL, EMOTIONAL OR ECONOMIC DAMAGE RESULTING FROM THE

24  DEFENDANT'S CONDUCT.  MR. GRAY TESTIFIED THAT WITH THE

25  POSSIBLE EXCEPTION OF WHATEVER ECONOMIC LOSS HE SUSTAINED AS

1    A RESULT OF THE MANNER IN WHICH MAZDA ADDRESSED THE DEFECTS

2    IN THIS CASE, NONE OF THOSE FACTORS APPLY.

3            I FIND BY A PREPONDERANCE OF THE EVIDENCE THAT

4    NONE OF THE THREE FACTORS WHICH WOULD ENABLE ME TO CONSIDER

5    A DISCRETIONARY POSITION OF A FURTHER TREBLED -- UP TO

6    TREBLED CIVIL PENALTY IN LIGHT OF THE FACT THAT MR. GRAY IS

7    DISABLED APPLY.

8            I FURTHER FIND THAT THE REFUSAL ON THE PART OF

9    MAZDA TO REPURCHASE THE CAR WAS MADE IN GOOD FAITH.  THERE

10   IS A DISCREPANCY BETWEEN THE DETAIL IN MAZDA'S PAPER RECORD

11   AND THE REASONS CITED FOR THE REFUSAL TO PURCHASE.  THERE IS

12   CRITICISM THAT MAZDA IN ITS WRITTEN RESPONSE VIA E-MAIL

13   SIMPLY SAID THAT THE REPURCHASE WAS BEING REFUSED BECAUSE

14   THE VEHICLE WAS NOT SUBSTANTIALLY IMPAIRED IN VALUE, USE, OR

15   SAFETY AND FAILED TO SPECIFY THAT THOSE CONDITIONS WERE TRUE

16   AS TO THE PLAINTIFF.

17           I FIND AS A FACTUAL MATTER, WHICH I WILL RECITE

18   LATER, THAT THE VEHICLE WAS NOT SUBSTANTIALLY IMPAIRED AS TO

19   THE PLAINTIFF.  I FIND IT INCONSEQUENTIAL THAT MAZDA DID NOT

20   RECITE THE FULL STATUTORY STANDARD; NAMELY, IMPAIRMENT AS TO

21   THE PLAINTIFF.

22           SO IF I WERE TO CONSIDER THE IMPOSITION OF THE

23   RESTITUTION AWARD AND THE PENALTY THEREFORE, I WOULD

24   NEVERTHELESS FIND THAT MAZDA ACTED IN GOOD FAITH WITH

25   RESPECT TO ITS REFUSAL TO REPURCHASE.

1       THE FIRST CLAIM BROUGHT HERE -- LET ME TURN TO THE

2 FINDING OF FACT:  NUMBER ONE, I FIND THAT I HAVE

3 JURISDICTION UNDER 28 USC SECTION 1332(A)(1) DIVERSITY

4 JURISDICTION.  THE PLAINTIFF'S CLAIM ADVANCED HERE IS A

5 CLAIM FOR BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

6 UNDER BOTH UNDER BOTH THE *SONG-BEVERLY* AND *MAGNUSON-MOSS*.  I

7 FIND THAT THE LAWS FIT FOR ITS ORDINARY PURPOSE.  I FIND

8 THAT MOST REPAIRS WERE IN A SAFE CONDITION AND SUBSTANTIALLY

9 FREE OF DETECTS.  I FIND THAT THE REPAIRS UNDERTAKEN BROUGHT

10 IT INTO CONFORMITY WITH THE EXPRESS WARRANTIES.  I FIND NO

11 VIOLATION.

12       I FIND THAT PLAINTIFF HAS NOT CARRIED ITS BURDEN

13 WITH RESPECT TO ESTABLISHING A BREACH OF THE IMPLIED

14 WARRANTY OF MERCHANTABILITY UNDER EITHER STATE OR FEDERAL

15 STATUTE.

16       THE SECOND CLAIM ADVANCED HERE IS A BREACH OF THE

17 IMPLIED WARRANTY OF FITNESS UNDER BOTH THE SONG-BEVERLY ACT

18 AND THE MOSS-MAGNUSON ACT.

19       I FIND THAT THE VEHICLE MEETS THE REQUIREMENTS FOR

20 A PARTICULAR PURPOSE; NAMELY, PROVIDING RELIABLE SAFE

21 TRANSPORTATION, IN GENERAL AND IN THIS CASE, SPECIFICALLY,

22 FOR JAMES GRAY.

23       THIRD, THERE IS A CLAIM FOR EXPRESS WARRANTY.  I

24 FIND NO BREACH OF THE CLAIM FOR EXPRESS WARRANTY.  I FIND

25 THAT ON EACH OCCASION, MAZDA REASONABLY ADDRESSED THE

1   PROBLEM, REASONABLY PURSUED SOLUTION OF THE PROBLEM AND IN

2   FACT ACCOMPLISHED A FIX.  I DO NOT FIND DELAYS BETWEEN

3   VARIOUS REPAIR VISITS TO CONSTITUTE A BREACH OF THE IMPLIED

4   WARRANTY.  I BELIEVE THAT ON EACH OCCASION, SOME EFFORT WAS

5   UNDERTAKEN TO IMPROVE THE CONDITION AND AT LEAST FOR A

6   TEMPORARY TIME TO BRING THE AUTOMOBILE INTO COMPLIANCE WITH

7   THE EXPRESS WARRANTY.

8           FOURTH, PLAINTIFF CLAIMS A BREACH OF THE DUTY TO

9   REPURCHASE UNDER 1793 -- 1794(A) AND 1793(D) OF THE CIVIL

10  CODE.

11          THE QUESTION THERE IS WHETHER THERE HAS BEEN A

12  SUBSTANTIAL IMPAIRMENT OF THE VALUE, USE OR SAFETY TO THE

13  BUYER.  THE CASE LAW, PARTICULARLY, THE *LUNDY* CASE MAKES

14  CLEAR THAT THAT STANDARD IS AN OBJECTIVE STANDARD, BUT IT

15  TAKES INTO ACCOUNT THE PECULIARITIES OF THE PARTICULAR

16  PLAINTIFF AT ISSUE.  I BELIEVE THAT MAZDA WAS AWARE THAT

17  THIS CAR WOULD BE USED BY JAMES GRAY FOR TRANSPORTATION AS A

18  TEENAGER AND, PERHAPS, ON VARIOUS TRIPS THAT A TEENAGER

19  MIGHT MAKE.

20          I FIND THAT THERE WAS NO SUBSTANTIAL IMPAIRMENT IN

21  THE USE OF THE CAR.  I FIND THAT THE OCCURRENCE OF NOISE

22  FROM TIME TO TIME MAY HAVE BEEN ANNOYING ON AN INTERMITTENT

23  BASIS, BUT IT DID NOT AMOUNT TO SUBSTANTIAL -- IMPAIRMENT OF

24  SUBSTANTIALLY USE OF THE CAR BY THE BUYER.

25          I FURTHER FIND THAT THERE WAS NO SUBSTANTIAL

*DEBORAH D. PARKER, U.S. COURT REPORTER*

1  NEVERTHELESS, THE FACT THAT HE CONTINUED TO USE THE CAR,

2  BOTH BEFORE AND AFTER HIS SUSPENSION -- HIS LICENSE WAS

3  SUSPENDED -- CAUSED ME TO BELIEVE THAT THERE WAS VALUE IN

4  THE CAR AND THAT ANY IMPAIRMENT IN THE VALUE OF THE CAR AS A

5  RESULT OF THE CLUNKING NOISE WAS NOT SUBSTANTIAL.

6        ACCORDINGLY, I FIND THAT APPLYING THE STANDARD OF

7  WHETHER THERE WAS A SUBSTANTIAL IMPAIRMENT IN VALUE, USE OR

8  SAFETY FROM THE PERSPECTIVE OF THE BUYER, THAT THERE WAS NO

9  SUBSTANTIAL IMPAIRMENT WITH REQUIRED MAZDA TO REPURCHASE THE

10 VEHICLE.

11       THE SIXTH CLAIM IS FOR A CIVIL PENALTY FOR WILLFUL

12 FAILURE.  AS I STATED PREVIOUSLY, I FIND THAT THE RECORD

13 DOES NOT SUPPORT BY A PREPONDERANCE OF THE EVIDENCE THE

14 AWARD OF A CIVIL PENALTY FOR WILLFULNESS, ASSUMING THAT

15 MAZDA BREACHED ANY OF THE DUTIES THAT WOULD GIVE RISE TO

16 THAT CIVIL PENALTY.

17       SEVENTH, THERE'S A CLAIM FOR THE MANDATORY CIVIL

18 PENALTY UNDER 1794(E) FOR THE BREACH OF THE DUTY TO

19 REPURCHASE.  NO WILLFULNESS REQUIREMENT IS REQUIRED TO BRING

20 INTO PLAY THIS PENALTY.  IT IS SIMPLY THE VIOLATION OF

21 STATUTE WHICH ENTITLES THE OWNER TO THE TWO TIMES PENALTY.

22       FOR THE REASONS I HAVE STATED, I FIND THAT THE

23 DUTY TO REPURCHASE THE CAR NEVER AROSE AND, THEREFORE, MAZDA

24 WAS NEVER SUBJECT TO A MANDATORY PENALTY.

25       THE EIGHTH CLAIM HERE IS THAT PLAINTIFF IS

1   ENTITLED TO RECOVER FOR CONVERSION.  THIS CLAIM IS

2   PREDICATED EXCLUSIVELY UPON THE FAILURE TO MAKE RESTITUTION.

3   HAVING FOUND THAT THE STATUTORY RESTITUTION REQUIREMENT WAS

4   NOT PROVED BY A PREPONDERANCE OF THE EVIDENCE, FOR THE SAME

5   REASON THE CONVERSION CLAIM WAS NOT PROVED BY A

6   PREPONDERANCE OF THE EVIDENCE.

7          THE NINTH CLAIM IS A CLAIM FOR PUNITIVE DAMAGES.

8   ALTHOUGH STATED AS A CLAIM, OBVIOUSLY IT'S A TYPE OF DAMAGE

9   AND NOT A SEPARATE CLAIM.  GIVEN THAT I HAVE FOUND THAT

10  PLAINTIFF PREVAILS ON NONE OF THE CLAIMS, PLAINTIFF IS NO

11  ENTITLED TO PUNITIVE DAMAGES.  EVEN HAD PLAINTIFF PREVAILED

12  ON ANY PREDICATE CLAIM, THE EVIDENCE DOES NOT SUPPORTED BY

13  CLEAR AND CONVINCING EVIDENCE THAT MAZDA ACTED WITH FRAUD,

14  OPPRESSION, OR MALICE, OR IN ANY OTHER FASHION ABUSED THE

15  PLAINTIFF.

16         I WOULD MAKE THE SAME FINDING, EVEN IF THE

17  STANDARD WERE MERELY PREPONDERANCE OF THE EVIDENCE.

18  PLAINTIFF HAS NOT MADE OUT A CLAIM EVEN BY A PREPONDERANCE

19  OF THE EVIDENCE OF FRAUD, OPPRESSION, OR MALICE.

20         THE ONE FACTUAL ISSUE I HAVE NOT ADDRESSED IS

21  WHETHER THERE WAS ABUSE OF THE VEHICLE SUCH THAT THE

22  WARRANTY WAS VOIDED.  I DO NOT BELIEVE THAT I NEED TO COME

23  TO A CONCLUSION TO THAT ISSUE, GIVEN THE FINDINGS OF FACT

24  AND CONCLUSIONS OF LAW I HAVE RECITED.  HOWEVER, I WOULD

25  DRAW AN ADVERSE INFERENCE FROM THE FACT THAT BEING ON NOTICE

1   OF A VISUAL INSPECTION, THE GRAYS HAD THE TIRES REPLACED

2   BEFORE THE VISUAL INSPECTION.  IT'S CLEAR TO ME THAT MAZDA

3   WAS INHIBITED IN ASSESSING WHETHER THERE WAS, IN FACT,

4   MISUSE BY BEING DENIED THE TIRES.  IT'S ONE THING TO

5   PROVIDE -- TO BE ABLE TO CONDUCT A VISUAL INSPECTION AND TO

6   RELATE VISUAL OBSERVATIONS, SUCH AS MR. BENNINGTON'S

7   OBSERVATIONS OF SEVERE WEAR AT THE EDGES OF THE TIRES; IT'S

8   ANOTHER TO HAVE THE PHYSICAL EVIDENCE.

9           SO THE INFERENCE I DRAW IS THAT THE TIRE SUFFERED

10  EXCESSIVE WEAR.  NOW, WHAT WAS THE CAUSE OF THAT?

11          WE HAVE SOME EVIDENCE THAT, POTENTIALLY, IT WAS

12  MR. JAMES GRAY'S CONDUCT.  HE RECEIVED TWO SPEEDING TICKETS

13  AND ANOTHER TICKET THAT IS NOT PARTICULARLY RELEVANT TO

14  ABUSE.  I'M NOT ABLE TO DRAW FROM THAT AN INFERENCE OF

15  ABUSE, GENERALLY.  THERE WAS TESTIMONY THAT THESE CARS CAME

16  FROM FORMULA Z TIRES, A VERY SOFT TYPE TIRE THAT PROVIDES

17  HIGH PERFORMANCE BUT GOES QUICKLY.  TESTIMONY OF MR. CALEF

18  WAS THAT THE LIFE OF THOSE TIRES IS 10 TO 20,000 MILES.  THE

19  EVIDENCE INDICATES THAT THE CAR WAS SOMEWHERE AT OR ABOUT

20  10,000 MILES AT THE TIME THE TIRES WERE REPLACED.

21          ACCORDINGLY, ON THE BASIS OF THE RECORD BEFORE ME,

22  I'M NOT ABLE TO FIND BY A PREPONDERANCE OF THE EVIDENCE THAT

23  THERE WAS, IN FACT, ABUSE OF THE CAR SUCH THAT THE WARRANTY

24  WOULD BE VOIDED.

25          I ALSO GIVE NO WEIGHT TO THE FACT THAT SOME OF THE

1   REPAIRS MAY HAVE BEEN DONE AS A MATTER OF, QUOTE, GOODWILL.

2   ALL OF THE REPAIRS WERE BILLED TO MAZDA, AND I CONSIDER

3   MAZDA BY VIRTUE OF THAT FACT TO HAVE RECOGNIZED THAT ALL OF

4   THE REPAIRS WERE TENDERED AND APPROPRIATELY CONSIDERED UNDER

5   ITS EXPRESS AND OTHER WARRANTIES.

6          FOR ALL THE FOREGOING REASONS, I FIND THAT

7   PLAINTIFF HAS FAILED TO ESTABLISH ANY OF THE CLAIMS FOR

8   RELIEF BY A PREPONDERANCE OF THE EVIDENCE.  I FIND THAT THE

9   MAZDA DEFENDANTS ARE ENTITLED TO JUDGMENT IN THEIR FAVOR,

10  INCLUDING COSTS.

11         MR. ANDERSON:  YOUR HONOR, THANK YOU VERY MUCH FOR

12  YOUR TIME AND CONSIDERATION.

13         AS ALWAYS, I RECOGNIZE THE COURT SPENT A LOT OF

14  TIME ON THIS ISSUE, EVEN THOUGH IT WENT ADVERSE TO US.  IT'S

15  STILL IMPORTANT THAT THE COURT PAY CLOSE ATTENTION, AND I

16  ALSO APPRECIATE THE COURT GAVE ME AMPLE TIME TO TRY TO

17  PERSUADE THE COURT TO COME TO A DIFFERENT CONCLUSION.

18         THERE IS ONE FINDING OF FACT THAT THE COURT MADE

19  BACK THAT'S INCORRECT.  THE JURISDICTION IN THIS CASE IS

20  BASED ON --

21         THE COURT:  MOSS-MAGNUSON; CORRECT.

22         MR. ANDERSON:  FEDERAL QUESTION.  AND THE COURT

23  JUST SAID "DIVERSITY," AND IT SHOULD HAVE --

24         THE COURT:  RIGHT.  GOOD OBSERVATION.

25         FEDERAL QUESTION JURISDICTION UNDER 28 USC 1331:

*DEBORAH D. PARKER, U.S. COURT REPORTER*

25

```
 1   ALL STATE CLAIMS HAVE JURISDICTION UNDER 28 USC 1367.
 2            THANK YOU FOR THAT CORRECTION.
 3            MR. TAKAHASHI:  ON BEHALF OF MY CLIENTS AS WELL,
 4   WE THANK YOU FOR YOUR TIME AND PATIENCE.
 5            THE COURT:  WOULD YOU SUBMIT A FORMAL JUDGMENT
 6   WITHIN 10 DAYS.  IF IT'S ENDORSED AS TO FORM, I'LL ENTER IT
 7   IMMEDIATELY; OTHERWISE, I'LL WAIT SEVEN DAYS FROM THE
 8   OBJECTIONS AS TO THE FORM OF JUDGMENT.
 9            I APPRECIATE YOUR EFFORTS TO PRESENT THE EVIDENCE,
10   AS IT WAS PRESENTED HERE.  I BELIEVE THAT THE PARTIES ARE
11   BEST SERVED BY RENDERING A DECISION AS QUICKLY AS POSSIBLE,
12   WHICH HAPPENS AUTOMATICALLY IN A JURY TRIAL.
13            FROM MY OWN PERSONAL EXPERIENCES, I REALLY NEED TO
14   USE ALL OF MY EFFORTS TO RENDER A PROMPT RESOLUTION OF A
15   BENCH TRIAL.  I FIND THAT THAT DOESN'T ALWAYS OCCUR WHEN I
16   TAKE MATTERS UNDER SUBMISSION.  I FOUND THAT, ALTHOUGH IT'S
17   SUBSTANTIAL WORK ON THE PART OF THE PARTIES TO PUT THE
18   DIRECT TESTIMONY, IF I PUT IN THE WORK IN ADVANCE, READ THE
19   TESTIMONY AND READ EXHIBITS, DEPENDING ON THE COMPLEXITY OF
20   THE CASE, I'M ABLE TO RENDER AN ORAL DECISION AND I BELIEVE
21   THAT THE PARTIES ARE BEST SERVED BY HAVING A PROMPT DECISION
22   ONCE THEY HAVE PRESENTED THE CASE.  I ALSO APPRECIATE THE
23   SUBSTANTIAL WORK ON THE PART OF THE PARTIES.  IT ENABLES ME
24   TO DO THAT, SO I THANK YOU WILL FOR THOSE EFFORTS.
25            ANYTHING FURTHER?
```

*DEBORAH D. PARKER, U.S. COURT REPORTER*

1       MR. TAKAHASHI:  NO, YOUR HONOR.

2       MR. ANDERSON:  NO, YOUR HONOR.  THANK YOU.

3       THE CLERK:  ALL RISE.

4    *(AT 11:45 A.M., PROCEEDINGS WERE ADJOURNED.)*



7                              JAMES V. SELNA